IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| D'ANGELO & EURELL, DAVID S. D'ANGELO and DAVID S. D'ANGELO AND CHRISTOPHER S. D'ANGELO CO-EXECUTORS OF THE ESTATE OF OF GEORGE A. D'ANGELO, DECEASED, FOR HIMSELF AND TRADING AS D'ANGELO & EURELL : : : : : : : Plaintiffs, : v. : : ALLIED WORLD SPECIALTY INSURANCE : COMPANY : : Defendant. : | CIVIL ACTION No. 2:23-cv-00397-JFM |

## AMENDED COMPLAINT

Plaintiffs, D'Angelo & Eurell, David S. D'Angelo and the Estate of George A. D'Angelo, by way of Complaint against defendant, Allied World Specialty Insurance Company ("Allied World" or "Defendant Insurer")[1] state:

## NATURE OF ACTION

1. Plaintiffs, two lawyers and a law firm, bring this action against Allied World for its breaches of contract and improper and bad faith refusal and failure to provide a defense for and coverage of legal malpractice claims asserted against them by Lisa A. Markley ("Markley") as required by the lawyers professional liability insurance policy issued to D'Angelo & Eurell. Allied World's conduct wrongfully forced Plaintiffs to bear the costs and exposures of defending the underlying action, including through a jury trial and the entry of judgment for legal malpractice against one of the Plaintiffs, the Estate of George A. D'Angelo. Allied World's refusal to provide

---

[1] In their original action, Plaintiffs sued Darwin National Assurance Company. As represented in Allied World's Corporate Disclosure Statement in this action (ECF Doc. 2), Allied World was formerly known as Darwin National Assurance Company.

a defense of Plaintiffs, or any of them, in the underlying action – not even under a reservation of rights – and refusal to pay the judgment was and is contrary to the policy language, the Defendant Insurer's contractual and legal obligations to Plaintiffs, the Plaintiff policyholders' objectively reasonable coverage expectations, applicable Pennsylvania statutes and Pennsylvania public policy.

## PARTIES, JURISDICTION AND VENUE

2. D'Angelo & Eurell is a named insured under a Lawyers Professional Liability Insurance Policy, number 0307-7741, issued by Allied World for the period from August 21, 2012 through August 21, 2013 (the "Policy"), and at all times relevant to this action its law offices were located at 100 South Broad Street, Philadelphia, Pennsylvania 19110. A copy of the Policy is attached hereto as **Exhibit A**.

3. David S. D'Angelo ("David D'Angelo") is an insured under the Policy, is a citizen of the Commonwealth of Pennsylvania, and at all times relevant hereto had offices at 100 South Broad Street, Philadelphia, Pennsylvania 19110.

4. George A. D'Angelo ("George D'Angelo") is an insured under the Policy, and at all times relevant hereto had offices at 100 South Broad Street, Philadelphia, Pennsylvania 19110, and is now deceased. He died in 2018 during the underlying litigation. George D'Angelo's Estate (the "Estate") was raised in Montgomery County, Pennsylvania, and its co-executors are David D'Angelo and Christopher S. D'Angelo.

5. Allied World is an insurance company incorporated in the State of Delaware and maintains its principal place of business in Farmington, Connecticut. Allied World was formerly known as Darwin National Assurance Company and/or is the successor to Darwin National Assurance Company.

6. The Defendant Insurer issued the Policy to D'Angelo & Eurell in Philadelphia, Pennsylvania and at all times relevant hereto regularly issued insurance policies to insureds in Philadelphia and elsewhere in Pennsylvania.

7. Venue properly lies in this Court because at all times material hereto Defendant Insurers regularly conducted business in this judicial district in Philadelphia County, the cause of this action as well as the underlying action arose in Philadelphia County, and/or a transaction or occurrence took place in Philadelphia County out of which the cause of action arose.

## FACTUAL BACKGROUND

*The Policy*

8. The Defendant Insurer sold and issued the Policy to D'Angelo & Eurell.

9. The Policy provides Lawyers Professional Liability Insurance coverage to Plaintiffs, as well as the estate, executors and legal representatives of any insured individual.

10. The Policy requires the Defendant Insurer to provide coverage for any claims against Plaintiffs alleging "Wrongful Acts."

11. The Policy specifically requires the Defendant Insurer "to defend any claim seeking damages that are covered by this policy. . . even if any of the allegations are groundless, false or fraudulent."

12. The Policy also requires the Defendant Insurer to pay all "Damages" and "Claim Expenses" "that an insured becomes legally obligated to pay . . . because of a claim" made against any insured for "a Wrongful Act," including, but not limited to, "the monetary portion of any judgment, award or settlement, including the pre- and post-judgment interest."

13. Plaintiffs paid substantial premiums to purchase the Policy, and Plaintiffs have complied with all applicable terms and conditions of the Policy.

*The Underlying Claim*

14.     Plaintiffs defended a legal malpractice action captioned *Lisa Markley v. D'Angelo & Eurell, et al.*, initially filed in the Dauphin County Court of Common Pleas, No. 2013-cv-3010, and transferred to the Philadelphia County Court of Common Pleas, June Term 2017, No. 611 (the "*Markley* Action").

15.     In February 2013, David D'Angelo, as counsel for his father George D'Angelo, provided the Defendant Insurer with notice of a potential claim by Markley against George D'Angelo and D'Angelo & Eurell. In response, the Defendant Insurer sent David D'Angelo a letter dated March 13, 2013 advising that coverage would not be provided to George D'Angelo under the Policy's claim exclusion for "any act whatsoever of an Insured in connection with a trust or estate when an Insured is a beneficiary or distribute of the trust or estate" or for "the loss of value of any asset in the Insured's care, custody or control, misappropriation, conversion, embezzlement, failure to give an accounting, or commingling of client funds." However, the letter further stated:

> Based on this threshold bar to coverage . . . Darwin has not undertaken an in-depth analysis of all other coverage issues presented by this matter at this time. Darwin continues to reserve all of its rights under the Policy and applicable law. Darwin's position with respect to this matter is based on the information provided to date, and is subject to further evaluation as additional information becomes available. Darwin respectfully reserves all of its rights and defenses under the Policy and available at law, including the right to assert additional policy terms and provisions which may become applicable as new information is learned.

16.     By letter addressed to David D'Angelo dated March 29, 2013, counsel for the Defendant Insurer advised they made a "further review of the information previously provided" and reaffirmed the previous coverage determination concerning George D'Angelo but they also invited submission of "additional information relevant to Darwin's analysis of coverage."

4

17. On April 5, 2013, Markley filed a praecipe to issue a writ of summons in the *Markley* Action, listing The Law Offices of D'Angelo & Eurell, David D'Angelo and George D'Angelo as defendants. That day, Markley's counsel sent a letter to David D'Angelo and George D'Angelo marked "For Settlement Purposes Only" advising a "writ" was filed. David D'Angelo provided the Defendant Insurer with a copy of the letter. In response, the Defendant Insurer's counsel sent David D'Angelo a letter dated April 18, 2013 reaffirming the previous no coverage for George D'Angelo determination, but also advising, "If Ms. Markley files suit against George D'Angelo or the Firm, please provide a copy to us, and Darwin will carefully evaluate the availability of coverage for the suit based on the allegations in the complaint."

18. On May 20, 2013, Markley filed a praecipe to reissue or reinstate the writ of summons in the *Markley* Action. D'Angelo & Eurell, David D'Angelo and George D'Angelo were served with the reissued writ on June 12, 2013, and David D'Angelo sent a copy of the reissued writ to the Defendant Insurer's counsel that day.

19. On June 13, 2013, the Defendant Insurer's counsel sent an email to David D'Angelo advising that "Darwin will need a copy of the complaint, or any other communications you have received since our April 18 correspondence, to assess the availability of coverage under the Policy for this matter."

20. On October, 29, 2014, Markley filed a Complaint in the *Markley* Action. The Complaint alleged that Markley was a client, or former client, of each or all of the defendants and asserted a claim against D'Angelo & Eurell, David D'Angelo and George D'Angelo for professional negligence based upon alleged breaches of purported duties to provide legal services to Markley in a competent and professional manner.

21. On November 26, 2014, the Defendant Insurer's counsel sent a letter to David D'Angelo acknowledging receipt of Markley's Complaint. The letter discussed the Complaint's allegations against George D'Angelo and indicated no coverage was available under the Policy, including for the reasons set forth in Darwin's prior coverage letters. But the letter also indicated that Darwin would give "careful and prompt consideration" to additional information relevant to its analysis of coverage with respect to the *Markley* Action.

22. On April 8, 2015, Markley filed an Amended Complaint in the *Markley* Action. The Amended Complaint again alleged that Markley was a client, or former client, of each or all of the defendants and asserted a claim against D'Angelo & Eurell, David D'Angelo, and George D'Angelo for professional negligence based upon alleged breaches of purported duties to provide legal services to Markley in a competent and professional manner.

23. On January 5, 2016, the Defendant Insurer's counsel sent a letter to Plaintiffs' counsel acknowledging receipt of Markley's Amended Complaint and indicating that for the same reasons set forth in their November 26, 2014 letter, "no coverage is available under the Policy for the *Markley* Action." However, the letter invited production of additional information impacting coverage and advised that such information would be given "careful consideration." The letter also stated, "In addition, if Markley files a second amended complaint, please provide it to us, and Darwin will evaluate whether coverage is available under the Policy for the *Markley* Action based on the allegations in that pleading."

24. At no time did the Defendant Insurer advise any of the Plaintiffs that (a) it was providing a full and final declination of coverage as to any of them, (b) it was taking no further action with respect to the *Markley* Action, and (c) it was withdrawing from Plaintiffs' request for coverage regarding the *Markley* Action matter entirely and closing its file thereon. Indeed, the

Defendant Insurer's correspondence and communications with Plaintiffs continually requested that Plaintiffs keep it apprised of developments in the *Markley* Action, and Plaintiffs kept them so apprised.

25. In the *Markley* Action, Markley's counsel took only one deposition, that of David D'Angelo in May 2019.

26. In October 2019, Markley's counsel provided Plaintiffs with an expert liability report prepared by a former Pennsylvania state trial court judge, who based on the record, including the deposition of David D'Angelo, opined, among other things, that David D'Angelo, who was sued separately and individually, negligently advised or failed to advise Markley during Plaintiffs' representation of her. Plaintiffs provided the Defendant Insurer with a copy of Markley's liability expert's report.

27. Markley's liability expert's opinion that David D'Angelo negligently advised or failed to advise Ms. Markley is a "Wrongful Act," as defined by the Policy, and otherwise concerned acts or omissions not excluded by the Policy.

28. Markley's liability expert's opinion did not fault the D'Angelo & Eurell firm for conduct excluded by the Policy.

29. Markley's liability expert's opinion did not fault David D'Angelo personally for conduct excluded by the Policy.

30. Markley's liability expert's opinion also stated that George D'Angelo engaged in acts and/or omissions not excluded by the Policy.

31. Nevertheless, the Defendant Insurer failed to provide a defense for David D'Angelo and D'Angelo & Eurell throughout the duration of the *Markley* Action.

32. The *Markley* Action alleged that Plaintiffs committed various Wrongful Acts falling squarely within Allied World's policy coverage, including for professional negligence.

33. Plaintiffs repeatedly requested that Allied World defend them in connection with the *Markley* Action, and Plaintiffs complied with all applicable notice provisions and any other prerequisites to coverage under the Policy.

34. Allied World refused and failed to defend Plaintiffs under the Policy against the *Markley* Action without any valid basis or assessment of its coverage obligations to each Plaintiff as named insureds in the Policy, contrary to the express provisions of the Policy and in bad faith.

35. With respect to David D'Angelo and D'Angelo & Eurell, Allied World's refusal to defend could only be adduced by its silence and inaction as the April 15, 2021 trial date in the *Markley* Action approached. With the trial date approaching, Allied World had inexplicably failed to make any coverage or defense assessments concerning David D'Angelo or D'Angelo & Eurell, particularly after it received Markley's professional liability expert's report. Or, if Allied World had made such an assessment, it failed to communicate its determination to Plaintiffs, leaving them in the dark as the Markley trial loomed. As best as Plaintiffs can tell, Allied World still has not assessed its obligation to cover and defend each individual Plaintiff, evidently lumping them together as the "Insureds," rather than making the individual coverage determinations the Policy requires.

36. The Defendant Insurer refused to defend each Plaintiff in the underlying *Markley* Action based on certain acts or omissions of George D'Angelo as alleged in plaintiff Markley's pleadings.

37. The Defendant Insurer's letters declining coverage do not address the other alleged acts or omissions of George D'Angelo.

38. The Defendant Insurer's letters declining coverage do not address the acts or omissions of either David D'Angelo or D'Angelo & Eurell.

39. The Defendant Insurer's refusal to defend Plaintiffs in the underlying *Markley* action were not based on alleged acts or omissions of David D'Angelo or D'Angelo & Eurell.

40. The Defendant Insurer did not give prompt or careful consideration to the additional information Plaintiffs provided to it concerning the *Markley* Action, including, but not limited to, Markley's October 2019 expert liability report.

41. From the outset of the *Markley* Action, Plaintiffs faced enormous financial risk in the form of Markley's greater than $2 million compensatory damages claim, plus statutory delay damages (potentially a six-figure amount), and punitive damages, a risk they endured through protracted proceedings in two county courts, aggressive discovery tactics by their adversary, including related motions and hearings and a contentious deposition in which Markley's counsel vociferously attempted to intimidate David D'Angelo, and a harrowing week-long jury trial. Notwithstanding their confidence in the merits of their defenses, Plaintiffs understood the risk of a jury trial, including a jury verdict that could be devastating financially and personally to all of them. In short, because of the lack of insurance to provide and pay for their defense and to indemnify them, each of them faced the prospect of bankruptcy. In addition, throughout the *Markley* Action, Markley's counsel threatened George D'Angelo and David D'Angelo with disciplinary action, accusing each of them of unethical and potentially criminal conduct, and ultimately serving them with a report by a former state court trial judge who opined that each of them breached duties of care owed to Markley and violated a litany of Rules of Professional Conduct, exposing them to civil liability and professional sanctions, opinions made public so as to embarrass them and harm their professional reputations.

42. During the course of the *Markley* Action, Plaintiffs kept Allied World apprised of all material developments in the *Markley* Action, including the disclosure of expert reports on behalf of Ms. Markley that included: detailed opinions of alleged professional negligence on the part of Plaintiffs; a copy of the court's opinion denying Plaintiffs' motion for summary judgment in the underlying action in which the court noted "The litigation has been presented as a legal malpractice action…."; the settlement recommendations of the court after a hearing on the summary judgment motion; and various pre-trial events, including a court-mandated settlement conference a month before the trial.

43. Even though the Defendant Insurer issued coverage denial letters each time that Plaintiffs furnished it with Markley's pleadings in the underlying action, it did not respond at all when Plaintiffs provided it with a copy of Markley's liability expert report of October 2019 and repeated a demand for coverage and a defense.

44. Abandoned by Defendant Insurers, Plaintiffs alone and at their own expense defended the *Markley* Action, eventually proceeding to a jury trial in April 2021 that resulted in a verdict finding that George D'Angelo had committed legal malpractice and that his Estate was liable to Ms. Markley in the amount of $600,000 therefor, but that D'Angelo & Eurell and David D'Angelo had not committed legal malpractice and were not liable for any of Markley's claims. In May 2021, a judgment in the amount of $600,000 was entered against the Estate.

45. In the trial of the *Markley* Action, Markley presented expert witness testimony asserting that each of the Plaintiffs, including David D'Angelo individually, had engaged in professional negligence, which testimony was consistent with the opinions set forth in written reports that were provided to Allied World. Based on the trial evidence, the trial judge instructed the jury that they were to determine whether any of the Plaintiffs committed legal malpractice and

permitted the jury to award punitive damages, if the jury found that the evidence warranted such an award.

46. Allied World's refusal to defend Plaintiffs in the *Markley* Action resulted in Plaintiffs incurring legal fees and other expenses for their defense of that action, in Plaintiffs being unnecessarily and unreasonably put through protracted and severe emotional distress, and the Estate being held liable for the judgment.

47. As a further consequence of Allied World's failure to defend and indemnify Plaintiffs, or any of them, in the *Markley* Action, since the Estate was raised in 2018, the executors of the Estate have defended claims litigated against the Estate by Markley identical to those claims asserted in the *Markley* Action (the "Orphans' Court Matter"); they cannot close the Estate because Markley now seeks to recover in the Orphans' Court Matter the judgment she obtained against George D'Angelo for legal malpractice in the *Markley* Action.

## COUNT I
### (Breach of Contract)

48. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs and make them a part hereof as if set forth at length herein.

49. The Policy imposed on Allied World a contractual obligation to defend each of the Plaintiffs against the *Markley* Action.

50. Allied World breached the Policy by refusing to defend any of the Plaintiffs against the *Markley* Action.

51. The Policy imposed on Allied World a contractual obligation to indemnify Plaintiffs for their attorneys' fees and all other costs incurred in defending the *Markley* Action, and for payment of the judgment against the Estate.

52. Allied World breached the Policy by failing to indemnify Plaintiffs for their legal fees and all other costs incurred in defending the *Markley* Action and for satisfaction of the judgment against the Estate.

53. Allied World, in its claims handling practices, did not afford Plaintiffs' interests the same consideration as its own.

54. Moreover, Allied World did not evaluate the *Markley* Action or its obligations under the Policy in an honest, intelligent, objective and lawful manner, in particular by failing to assess the claims against each individual Plaintiff and to determine whether they owed a duty to defend each Plaintiff.

55. Allied World frivolously and without valid reason failed and refused to acknowledge its duty to defend and obligation to fund Plaintiffs' defense in the *Markley* Action and resolve the judgment against the Estate therein.

56. Allied World, acting with self-interest or ill-will, did not deal with Plaintiffs on a fair and frank basis and did not discharge its duties toward Plaintiffs in good faith; as such, Allied World has also breached the implied covenant of good faith and fair dealing inherent in the Policy and under applicable law.

57. Allied World, acting with self-interest or ill-will, abandoned Plaintiffs to fend for themselves without the benefit and protections Allied World had expressly promised to and was obligated to provide.

58. Allied World breached its obligations under the Policy, depriving Plaintiffs of the benefit of the insurance protection for which they paid a substantial premium.

59. Allied World's breaches of its obligations under the Policy has damaged, and continues to damage, Plaintiffs in an amount to be determined at trial.

60. Allied World's breaches of contract were also of such a kind that serious emotional disturbance to Plaintiffs was a particularly likely result, and such emotional disturbance did result.

**WHEREFORE**, Plaintiffs demand that judgment be entered in their favor and against Allied World in an amount in excess of $150,000 exclusive of interest and costs and that this Court award them:

(i) compensatory and consequential damages for Allied World's breaches of its contractual obligations under the Policy and its duty to act in good faith and with fair dealing, including but not limited to:

  (a) all attorneys' fees and other costs incurred in the defense of the *Markley* Action and the Orphans' Court Matter;

  (b) payment of the judgment in the *Markley* Action;

  (c) pre-judgment and post-judgment interest;

(ii) emotional distress damages; and

(iii) such other and further relief as the Court may deem just and appropriate.

### COUNT II
### (Bad Faith)

61. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs and make them a part hereof as if set forth at length herein.

62. Pursuant to 42 Pa. C.S.A. § 8371 (the "Bad Faith Statute"), Plaintiffs are entitled to damages as a result of Defendants' bad faith conduct toward them.

63. The Bad Faith Statute provides "[i]n any action arising under an insurance policy, if the court finds the insurer has acted in bad faith towards the insured, the court may take all of the following actions:" (1) award interest on the amount of the claim from the date the claim was made, (2) award punitive damages, and (3) assess court costs and attorneys' fees.

64. An insurer is deemed to have acted in bad faith in violation of the Bad Faith Statute when the insurer has no reasonable basis for its action and the insurer knew of or recklessly disregarded the fact that it lacked a reasonable basis for its actions.

65. Insurer bad faith has been found to exist where, among other things, an insurer unreasonably denies coverage, or fails to act promptly on a claim.

66. Courts have also determined that violations of Pennsylvania's Unfair Insurance Practices Act, 40 Pa. C.S.A. §1171.4, et seq. ("UIPA"), may demonstrate the existence of bad faith under the Bad Faith Statute.

67. The UIPA specifically prohibits an insurer from, among other things:

   a. Misrepresenting pertinent facts or policy or contract provisions relating to coverages at issue;

   b. Failing to acknowledge and act promptly upon written or oral communications with respect to claims arising under insurance policies;

   c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

   d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

   e. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the insureds' liability under the policy has become reasonably clear;

   f. Compelling persons to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts due and ultimately recovered in actions brought by such persons; and

  g. Failing to promptly provide a reasonable explanation of the basis in the insurance policy for denial of a claim or for the offer of a compromise settlement.

68. Allied World's refusal to provide a defense for Plaintiffs and refusal and failure to pay and commit to pay Plaintiffs' defense costs and any judgment or settlement in the *Markley* Action constitutes bad faith.

69. Allied World's rejection of Plaintiffs' claim for coverage for the *Markley* Action was in bad faith because, as explained above, the *Markley* Action alleges conduct that constitutes a Wrongful Act under the Policy, which is broadly defined to include, among other things, services performed by a licensed lawyer in good standing, including acting in a fiduciary capacity, in the ordinary course of the insured's activities as a lawyer.

70. The *Markley* Action raised a number of allegations, supported by expert witness opinions, that fall within the Policy's broad definition of legal services, triggering Allied World's duty to acknowledge and undertake its coverage obligations.

71. Allied World's bad faith conduct forced Plaintiffs to fund all of their defense costs in connection with the prolonged *Markley* Action and to incur substantial legal fees and expenses, as well as to face serious financial risk and professional reputational harm at trial, in a case in which the jury was permitted to consider awarding punitive damages, notwithstanding that Allied World knew the claims and expert testimony that would be presented against Plaintiffs and knew that the *Markley* Action could have been settled within the coverage limits of the Policy long before the trial.

72. In evaluating their obligations under the Policy, Allied World failed to accord the interests of the Plaintiffs the same faithful consideration that it has given its own interests and, instead, ignored the interests of Plaintiffs.

73. In evaluating its obligations under the Policy, Allied World failed to use the same degree of care and diligence as a person of ordinary care and prudence would exercise in the management of his own business.

74. Allied World failed to investigate the opinions contained in Markley's October 2019 expert liability report submitted in the *Markey* Action and its failure to so investigate was in bad faith.

75. Allied World failed to perform its duty to diligently read and comprehend the complaints and expert witness opinions in the *Markley* Action with all doubts as to whether the claim may fall within the coverage of the Policy resolved in favor of Plaintiffs.

76. In denying coverage to Plaintiffs, Allied World acted with ill will and/or an improper motivation.

77. Allied World lacked a reasonable basis to deny coverage to Plaintiffs and knew or recklessly disregarded their lack of a reasonable basis.

78. Allied World also frivolously and without reason failed and refused to acknowledge their obligation to fund Plaintiffs' defense and resolve the judgment against the Estate.

79. Plaintiffs have been harmed as a result of Allied World's bad faith conduct.

**WHEREFORE**, Plaintiffs demand that judgment be entered in their favor and against Allied World in an amount in excess of $150,000 exclusive of interest and costs and that this Court award them:

(i)      compensatory, consequential and punitive damages resulting from Allied World's bad faith refusal to provide coverage for the *Markley* Action;

(ii)      Plaintiffs' costs of defending Markley's claims against the Estate of George D'Angelo in the Orphans' Court Matter;

(ii)      court costs, attorneys' fees and interest against Defendants;

(iii)      the relief available under 42 Pa.C.S.A. § 8371, *et seq*;

(iv)      emotional distress damages; and

(v)      such other relief as the Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: February 15, 2023                                **McSHEA LAW FIRM, P.C.**

                                                                   By: *s/ John P. McShea*
                                                                          John P. McShea (PA 34562)
                                                                          Conrad O. Kattner (PA 35468)
                                                                          Ralph J. Kelly (PA 39706)
                                                                          1500 Market Street, 40th Floor
                                                                          Philadelphia, PA 19102
                                                                          Tel. (215) 599-0800
                                                                          Fax (215) 599-0888
                                                                          JMcShea@mcshealawfirm.com
                                                                          CKattner@mcshealawfirm.com
                                                                          RKelly@mcshealawfirm.com

                                                                          *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

This is to certify that on this 15th day of February, 2023, I electronically filed the foregoing Amended Complaint using the *CM/ECF* system, which will automatically send email notification of such filing to all counsel of record in the above-captioned action.

*s/ John P. McShea*
John P. McShea