## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| D'ANGELO & EURELL, DAVID S. D'ANGELO AND | : | CIVIL ACTION |
| DAVID S. D'ANGELO AND CHRISTOPHER S. | : | |
| D'ANGELO CO-EXECUTORS OF THE ESTATE OF | : | No. 2:23-cv-00397-JFM |
| OF GEORGE A. D'ANGELO, DECEASED, FOR | : | |
| HIMSELF AND TRADING AS D'ANGELO & EURELL | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| ALLIED WORLD SPECIALTY INSURANCE | : | |
| COMPANY | : | |
| | : | |
| Defendant. | : | |

## <u>ORDER</u>

**AND NOW**, this _____ day of _____, 2023, upon considering Defendant's

Motion to Dismiss the Amended Complaint (DI 13) ("Defendant's Motion") and Plaintiffs'

opposition thereto, it is **ORDERED** that Defendant's Motion is **DENIED**.

_____

**MURPHY, J.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| D'ANGELO & EURELL, DAVID S. D'ANGELO AND | : | CIVIL ACTION |
| DAVID S. D'ANGELO AND CHRISTOPHER S. | : | |
| D'ANGELO CO-EXECUTORS OF THE ESTATE OF | : | No. 2:23-cv-00397-JFM |
| OF GEORGE A. D'ANGELO, DECEASED, FOR | : | |
| HIMSELF AND TRADING AS D'ANGELO & EURELL | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| ALLIED WORLD SPECIALTY INSURANCE | : | |
| COMPANY | : | |
| | : | |
| Defendant. | : | |

## RESPONSE OF PLAINTIFFS IN OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS THE AMENDED COMPLAINT

Plaintiffs, D'Angelo & Eurell, David S. D'Angelo and the Estate of George A. D'Angelo,

oppose the Motion to Dismiss the Amended Complaint (DI 13) filed by defendant, Allied World

Specialty Insurance Company, for the reasons stated in the accompanying brief.


Dated:  March 14, 2023

**McSHEA LAW FIRM, P.C.**

By:  *s/ John P. McShea*
John P. McShea (PA 34562)
Conrad O. Kattner (PA 35468)
Ralph J. Kelly (PA 39706)
1500 Market Street, 40th Floor
Philadelphia, PA 19102
Tel. (215) 599-0800
Fax (215) 599-0888
JMcShea@mcshealawfirm.com
CKattner@mcshealawfirm.com
RKelly@mcshealawfirm.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| D'ANGELO & EURELL, DAVID S. D'ANGELO AND | : | CIVIL ACTION |
| DAVID S. D'ANGELO AND CHRISTOPHER S. | : | |
| D'ANGELO CO-EXECUTORS OF THE ESTATE OF | : | No. 2:23-cv-00397-JFM |
| OF GEORGE A. D'ANGELO, DECEASED, FOR | : | |
| HIMSELF AND TRADING AS D'ANGELO & EURELL | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| ALLIED WORLD SPECIALTY INSURANCE | : | |
| COMPANY | : | |
| | : | |
| Defendant. | : | |

**BRIEF OF PLAINTIFFS IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................................ii

I.     INTRODUCTION.............................................................................................1

II.    BACKGROUND…………………………………….…...........................................5

    A.    Facts...............................................................................................5

    B.    Relevant Procedural History..................................................7

III.   STANDARD OF REVIEW………………………………………………..….....8

III.   ARGUMENT..................................................................................................10

    A.    Plaintiffs' Breach of Contract and Bad Faith Claims Were Timely Filed..............10

        1.   Defendant's purported claim denial communications do not provide grounds to time-bar Plaintiffs' claims........................................10

        2.   Defendant has waived discussion of its failure to provide any coverage or defense assessments concerning David D'Angelo and D'Angelo & Eurell and its failure to acknowledge additional information Plaintiffs provided to it concerning the *Markley* Action, including Markley's October 2019 expert liability report...........................12

        3.   Plaintiffs' breach of contract claim is not barred by the statute of Limitations........................................13

        4.   Plaintiffs' bad faith claim is subject to multiple limitations periods and is not barred by the statute of limitations.....................17

    B.    Plaintiffs' Bad Faith Claim Sufficiently States a Cause of Action Against Defendant........................................19

IV.   CONCLUSION................................................................................23

# TABLE OF AUTHORITIES

CASES

*Adamski v. Allstate Ins. Co.*,
738 A.2d 1033 (Pa. Super. 1999).........................................................................10, 17, 18

*Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*,
2 A.3d 526 (Pa. 2010)......................................................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................8

*Baker v. Pa. Econ. League, Inc. Ret. Income Plan*,
811 F. Supp. 2d 1136 (E.D. Pa. 2011)..............................................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555 (2007)....................................................................................................8

*Chacko v. Sigmapharm Labs.*,
No. 22-cv-2336, 2023 WL 2330419 (E.D. Pa. Mar. 2, 2023)...........................................22

*C.H. Robinson Worldwide, Inc. v. Lobrano*,
695 F.3d 758 (8th Cir. 2012).............................................................................................9

*Condio v. Erie Ins. Exchange*,
899 A.2d 1136 (Pa. Super. 2006).....................................................................................17

*Connelly v. Lane Constr. Corp.*,
809 F.3d 780 (3d Cir. 2016)..........................................................................................8, 9

*Cottman Ave. PRP Grp. v. AMEC Foster Wheeler Envtl. Infrastructure Inc.*,
439 F. Supp. 3d 407 (E.D. Pa. 2020)................................................................................15

*CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*,
645 F. Supp. 2d 354 (E.D. Pa. 2009)................................................................................11

*Dietz v. Liberty Mut. Ins. Co.*,
No. 20-cv-1239, 2020 WL 3414660 (E.D. Pa. June 22, 2020)..........................................22

*Doyle v. Liberty Mut. Ins.*,
No. 19-cv-3460, 2019 WL 4917123 (E.D. Pa. Oct. 4, 2019).......................................21, 22

*Erie Ins. Exch. v. Moore*,
228 A.3d 258 (Pa. 2020)..............................................................................................14, 15

ii

*Gen. Accident Ins. Co. of Am. v. Allen*,
    692 A.2d 1089 (Pa. 1997)................................................................................14

*Hoffman v. Nordic Naturals, Inc.*,
    837 F.3d 272 (3d Cir. 2016)..............................................................................9

*In re Cmty. Bank of N. Va.*,
    622 F.3d 275 (3d Cir. 2010)..............................................................................9

*Jack v. State Farm Fire & Cas. Co.*,
    No. 2017 WL 945031 (E.D. Pa. Mar. 3, 2017)................................................22

*Jones v. Allstate Ins. Co.*,
    No. 17-cv-648, 2017 WL 2633472 (E.D. Pa. Jun. 19, 2017).......................21, 22

*Lafferty v. St. Riel*,
    495 F.3d 72 (3d Cir. 2007)................................................................................9

*Lett v. Se. Pa. Transp. Auth.*,
    No. 19-cv-3170, 2020 WL 12702548 (E.D. Pa. June 11, 2020).......................12

*Mezzacappa v. State Farm Ins. Co.*,
    No. 04-cv-5249, 2004 WL 2900729 (E.D. Pa. Dec. 14, 2004).........................20

*O'Donnell ex rel. Mitro v. Allstate Ins. Co.*,
    734 A.2d 901 (Pa. Super. 1999).......................................................................21

*Pacific Indem. Co. v. Linn*,
    766 F.2d 754 (3d Cir. 1985)............................................................................14

*PECO Energy Co. v. Nationwide Mut. Ins. Co.*,
    586 F. Supp. 3d 339 (E.D. Pa. 2022)..............................................................15

*Ramara, Inc. v. Westfield Ins. Co.*,
    814 F.3d 660 (3d Cir. 2016)............................................................................15

*Rancosky v. Wash. Nat'l Ins. Co.*,
    130 A.3d 79, 99 (Pa. Super. 2015)........................................................17, 18, 21

*Reliance Ins. Co. v. Moessner*,
    121 F.3d 895 (3d Cir. 1997)..............................................................................9

*Rice v. Diocese of Altoona-Johnstown*,
    255 A.3d 237 (Pa. 2021).................................................................................15

*Romano v. Nationwide Mut. Fire Ins. Co.*,
    646 A.2d 1228 (Pa. Super. 1994)................................................................17, 21

*Sadtler v. Jackson–Cross Co.*,
    587 A.2d 727 (Pa. Super. 1991)........................................................................15

*Scarpato v. Allstate Ins. Co.*,
    No. 05-cv-5520, 2007 WL 172341 (E.D. Pa. Jan. 23, 2007).............................20

*Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214 (3d. Cir. 2005).................................13, 14

*Simon Wrecking Co., Inc. v. AIU Ins. Co.*,
    350 F. Supp. 2d 624 (E.D. Pa. 2004)................................................................11

*Smith v. Allstate Ins.* Co.,
    No. 21-5048, 2022 WL 1460331 (E.D. Pa. May 9, 2022)..................................20

*Snider for Goldhirsh v. State Farm Fire & Cas. Co.*,
    ___ F. Supp. 3d ___, No. 21-cv-4224, 2022 WL 17540210 (E.D. Pa. Dec. 8, 2022)...19, 20

*United States v. Martin*,
    454 F. Supp. 2d 278 (E.D. Pa. 2006)................................................................12

*Vitamin Energy, LLC v. Evanston Ins. Co.*,
    22 F.4th 386 (3d Cir. 2022)...............................................................................14

*Wiseman Oil Co., Inc. v. TIG Ins. Co.*,
    878 F. Supp. 2d 597 (W.D. Pa. 2012)...............................................................11

*Wisniewski v. Fisher*,
    857 F.3d 152 (3d Cir. 2017)................................................................................9

**STATUTES**

40 Pa. C.S.A. § 1171.4...................................................................................................21

42 Pa. C.S.A. § 5502(a).................................................................................................15

42 Pa. C.S.A. § 8371.......................................................3, 5, 10, 13, 17, 19, 20, 21, 22, 23

**RULES**

Fed. R. Civ. P. 8(a)(2)..............................................................................................8, 22

Fed. R. Civ. P. 8(c)(1)...................................................................................................9

Fed. R. Civ. P. 12(b)(6)............................................................................................................8, 22

## I.    <u>INTRODUCTION</u>

This action arises out of an insurance contract between Defendant, Allied World Specialty Insurance ("Allied World"), and Plaintiffs, lawyers George D'Angelo and his son David D'Angelo, and their law firm, D'Angelo & Eurell, according to which Allied World agreed to defend and indemnify Plaintiffs against claims for professional negligence.  In 2013, Lisa Markley, a client of George D'Angelo, commenced an action against all three Plaintiffs by filing in the Dauphin County, Pennsylvania Court of Common Pleas a writ of summons—a document that does not specify what the action was about.  It was not until October 29, 2014, when Ms. Markley filed her verified complaint, that Plaintiffs were informed that Ms. Markley was suing them for legal malpractice, among other causes of action.  However, Ms. Markley did not include the certificates of merit that were required for each lawyer defendant when asserting a claim for professional negligence.  When Plaintiffs immediately notified Defendant of Markley's claims and provided it with a copy of the complaint, Allied World declined to provide a defense (even under a reservation of rights) or commit to indemnify any of them, even for the legal malpractice claim, ostensibly because Markley's action asserted claims for certain alleged acts of *George* D'Angelo not covered by its policy.

As the litigation proceeded, with Markley filing an amended complaint in 2015—for the first time supplying the requisite certificates of merit supporting her legal malpractice claims—Allied World again refused to defend or indemnify the Plaintiffs, again for the same reasons as noted after reviewing Markley's initial complaint.  And in 2019, when Plaintiffs promptly provided Allied World with Markley's professional liability expert's report detailing the reasons for Markley's legal malpractice claims—mostly directed against George D'Angelo, and *different* claims against David D'Angelo and the firm—Allied World did . . . *nothing*.  It never so much as

acknowledged receiving or reading the expert's report, let alone provide Plaintiffs with its reasons explaining why the opinions of Markley's expert, a former Pennsylvania trial judge, did not alter its prior decisions to refuse coverage, notably continuing its failure to address the different claims against each of the Plaintiffs or explaining why *none* of them deserved at least a defense.

Plaintiffs moved for summary judgment in Markley's action, but the state court denied the motion in January 2019, noting in the court's opinion that the case was presented as a "legal malpractice action."   The court, aware that Markley was seeking more than $2 million in compensatory damages, also recommended that the parties settle—events that Plaintiffs shared with Allied World, who still continued to refuse to engage.

Following a six-day trial in 2021, a Philadelphia County jury rendered a unanimous verdict that David D'Angelo and D'Angelo & Eurell were not liable for any claims brought by Markley, but that George D'Angelo was liable for legal malpractice, as well as for other causes of action, in the amount of $600,000.  During the protracted Markley litigation, Plaintiffs incurred substantial expenses and endured constant stress as they faced personal liability for the Markley multi-million dollar claim.[1]

In this action for breach of contract and bad faith, Allied World moves to dismiss Plaintiffs' Amended Complaint asserting their claims are untimely and that the bad faith claim is legally deficient.  Plaintiffs filed their claim against Allied World on October 25, 2018, less than four years after receiving Markley's initial complaint, and therefore within Pennsylvania's four-year limitations period for breach of contract actions.

---

[1] George D'Angelo died in 2018 during the pendency of the action.  His sons, Christopher D'Angelo and David D'Angelo, were appointed Executors of and represent his Estate.

Plaintiffs' bad faith claim is also timely.  A cause of action under Pennsylvania's Bad Faith statute, 42 Pa. C.S.A. § 8371, is subject to a two-year limitations period; however,r there are multiple trigger dates for that limitations period.  Allied World's bad faith is reflected in its pattern of failing to assess the evolving evidentiary record in the underlying action, particularly its outright refusal to even consider the 2019 expert report that addressed each of the Plaintiffs individually—clearly an analysis that Allied World misapprehends to this day, as exemplified by its description of this action as "a liability coverage dispute in which Plaintiffs – a law firm and *one* of its lawyers seek damages from Allied World for purported breach of contract and statutory bad faith under Pennsylvania law  . . . ." (D1 13-1, Def.'s Br. at 1, emphasis added).  It was this abject failure to assess the claims asserted by Markley against *each* of the Plaintiffs individually, instead of assuming they were all jointly liable for George D'Angelo's alleged conduct, that apparently explains Allied World's misunderstanding, and the resulting mishandling, of Markley's claims against each of the Plaintiffs, one now liable for a $600,000 judgment for legal malpractice, and two who had to defend themselves for many years to prove they were not liable to Markley for professional negligence—precisely the acts Allied World was contractually bound to defend against and indemnify.

In sum, as the facts of the Amended Complaint, which must be accepted as true and all inferences therefrom drawn in Plaintiffs' favor, state, Plaintiffs' breach of contract and insurer bad faith claims are timely because, among other things:

(1)   Defendant's coverage denial communications fail to provide the type of notice required from an insurer, a clear and unequivocal denial as Pennsylvania requires to effectuate the claim denial;

(2)   Defendant has yet to provide a coverage analysis and claim denial with respect to

David D'Angelo or D'Angelo & Eurell;

(3)     Although Markley's claims against George D'Angelo, David D'Angelo and D'Angelo & Eurell evolved and expanded during the pendency of her action against them (the "*Markley* Action"), the complaint she filed on October 29, 2014 contained her first articulation of the nature of the claims she was asserting against each of them, including her first allegation of a *legal malpractice* claim against each of them.  The writ of summons that commenced the *Markley* Action did not inform them of the nature of the claim because it contained no factual allegations.  Rather, its accompanying civil cover sheet had a blank box next to "legal" in the "Professional Liability" category and a checked boxed next to "other professional" with a description of "Contract/negligence/accounting" in the "Professional Liability' category (*see* Markley's Writ of Summons, DI 1-4, pages 4 and 5 of 5); and

(4)     Defendant did not give prompt or careful consideration to the additional information Plaintiffs provided to it concerning the *Markley* Action, most importantly, Markley's expert liability report, served in October 2019, and promptly shared with Allied World.  In a glaring lapse on its part, Defendant never responded—in fact, still has not even acknowledged—Markley's liability expert report and their demand for coverage and a defense.

Accordingly, the facts alleged in the Amended Complaint indicate that the breach of contract and bad faith claims asserted in this case by D'Angelo & Eurell, and *two* lawyers who worked at the firm, George A. D'Angelo and David D'Angelo, are timely.  Therefore, Defendant's motion to dismiss the Amended Complaint on statute of limitations grounds must be denied.  The

4

factual allegations stated in the Amended Complaint also amply satisfy the federal notice pleading standard and state a cause of action against Defendant for bad faith under § 8371; hence, Defendant's motion to dismiss the bad faith claim on factual insufficiency grounds must be denied.

## II.   **BACKGROUND**[2]

### A.   **Facts**

Plaintiffs commenced this action against Allied World for its breaches of contract and bad faith refusal to provide a defense for and coverage of legal malpractice claims asserted against them by Markley, as required by the Lawyers Professional Liability Insurance Policy issued to D'Angelo & Eurell (the "Policy").  DI 7, Am. Compl. ¶¶ 1-4.  Allied World's conduct wrongfully forced Plaintiffs to bear the costs and risk of defending the lengthy underlying action, in which Markley claimed to be owed compensatory damages in excess of $2 million, concluding with a jury trial in Philadelphia County, and a verdict against George D'Angelo for legal malpractice; the jury found David D'Angelo and D'Angelo & Eurell not liable for any of Markley's causes of action.  *Id.* ¶ 1.  Allied World's refusal to provide a defense of Plaintiffs, or any of them, in the underlying action—not even under a reservation of rights—and refusal to pay the judgment was and is contrary to the Policy language, Defendant's contractual and legal obligations to Plaintiffs, the Plaintiff policyholders' objectively reasonable coverage expectations, applicable Pennsylvania statutes and Pennsylvania public policy.  *Id.*

Plaintiffs defended the *Markley* Action, a legal malpractice action captioned *Lisa Markley v. D'Angelo & Eurell, et al.*, initially filed in the Dauphin County Court of Common Pleas, No.

---

[2] Plaintiffs incorporate by reference all of the factual allegations of their Amended Complaint as if set forth in full herein.  Specific factual allegations of the Amended Complaint that refute the arguments raised in Defendant's Motion are discussed below and in the Argument section of this brief.

2013-cv-3010, and transferred to the Philadelphia County Court of Common Pleas, June Term 2017, No. 611 (the "*Markley* Action"). *Id.* ¶ 14. During the course of the *Markley* Action, Plaintiffs kept Allied World apprised of all material developments therein, including the disclosure of expert reports on behalf of Markley that included: detailed opinions concerning each Plaintiff's acts of professional negligence; a copy of the court's opinion denying Plaintiffs' motion for summary judgment in which the court noted "The litigation has been presented as a legal malpractice action…."; the settlement recommendations of the court after a hearing on the summary judgment motion; various pre-trial events, including a court-mandated settlement conference a month before the trial; and the trial itself. *Id.* ¶ 42.

Abandoned by Defendant, Plaintiffs at their own expense defended the *Markley* Action, from October 2014, when they received Markley's complaint in Dauphin County, to the jury trial in Philadelphia County in April 2021 that resulted in a judgment against George D'Angelo for legal malpractice. *Id.* ¶ 44.

In the *Markley* trial, Markley presented expert witness testimony asserting that each of the Plaintiffs, including David D'Angelo individually, had engaged in professional negligence, which testimony was consistent with the opinions set forth in written reports that were provided to Allied World. Based on the trial evidence, the trial judge instructed the jury that they were to determine whether any of the Plaintiffs committed legal malpractice and permitted the jury to award punitive damages, if the jury found that the evidence warranted such an award. *Id.* ¶ 45.

Allied World's refusal to defend Plaintiffs in the *Markley* Action resulted in Plaintiffs incurring legal fees and other expenses for their defense of that action, in Plaintiffs being unnecessarily and unreasonably put through protracted and severe emotional distress, and the Estate of George D'Angelo ("Estate") being held liable for the judgment. *Id.* ¶ 46. As a further

consequence of Allied World's failure to defend and indemnify Plaintiffs, or any of them, in the *Markley* Action, the executors of the Estate have defended the Markley claims against the Estate in Orphan's Court identical to those claims asserted in the *Markley* Action (the "Orphans' Court Matter"); they cannot close the Estate because Markley now seeks to recover in the Orphans' Court Matter the $600,000 judgment she obtained against George D'Angelo for legal malpractice. *Id.* ¶ 47.

### B.   Relevant Procedural History

Plaintiffs commenced this action by filing a writ of summons in the Philadelphia Court of Common Pleas on October 25, 2018.  Plaintiffs reissued the writ of summons on January 28, 2019. Defendant, through its counsel, voluntarily accepted service of the reissued writ of summons on February 15, 2019.

Plaintiffs filed an uncontested motion for stay on March 14, 2019.  The motion sought a stay of proceedings in this action until the final disposition of the *Markley* Action on grounds that the outcome of the *Markley* Action could substantially affect or be dispositive of issues in this action.  Defendant's counsel advised Plaintiffs' counsel that Defendant consented to the requested stay of proceedings.  The Common Pleas Court issued an order granting the motion for stay on March 15, 2019 and the case was placed in civil suspense.

A jury trial in *Markley* Action proceeded over six days from April 15, 2021 through April 23, 2021, culminating in a jury verdict in favor of David D'Angelo and D'Angelo & Eurell and for Markley and against the Estate of George D'Angelo in the amount of $600,000 in compensatory damages; the jury declined to award punitive damages.  The Common Pleas court entered judgment on the jury verdict on May 28, 2021.

Plaintiffs filed a complaint in this action on January 6, 2023.  Defendant removed the action to this Court on January 31, 2023 (DI 1).  Defendant filed a motion to dismiss the complaint on February 3, 2023 (DI 5).  Plaintiff filed an amended complaint on February 15, 2023 (DI 7) and filed a redlined version of the amended complaint on February 16, 203 (DI 9) in compliance with the Court's February 15, 2023 order requesting the same (DI 8).  The Court issued an order denying Defendant's motion to dismiss the original complaint as moot on February 22, 2023 (DI 11). Plaintiffs filed a statement concerning information necessary for the Court to assess diversity of citizenship on February 28, 2023 (DI 12) in compliance with the Court's February 21, 2023 order (DI 10) requesting the same.  Defendant filed a motion to dismiss the amended complaint on February 28, 2023 (DI 13).

## III.   <u>STANDARD OF REVIEW</u>

A plaintiff's pleading obligation is to set forth a short and plain statement of the claim which gives the defendant fair notice of what the claim is and the grounds upon which it rests.  *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a plaintiff need only show a plausible entitlement to relief.  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009).

Assessing the plausibility of a complaint is a three-step process.  *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  The first step requires the court to take note of the elements the plaintiff must plead to state a claim.  *Id.*  The second step requires that the court identify and disregard any "formulaic recitation of the elements of a claim" or other legal conclusion and allegations that are so "threadbare or speculative that they fail to cross the line

between the conclusory and the factual." *Id.* (internal quotation marks and citation omitted). The third step requires the court to evaluate the remaining allegations, assuming their veracity and viewing them in the light most favorable to the plaintiff, to "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 787, 790 (internal quotation marks and citation omitted). The Amended Complaint in this case satisfies the plausibility standard.

Additionally, the statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c)(1). In the Third Circuit, a statute of limitations affirmative defense may be raised in a motion to dismiss only where it is apparent on the face of the complaint that the subject claim is barred by the applicable limitations period. *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). "The face of the complaint" has been interpreted to mean "the allegations contained in the complaint, matters of public record, 'materials embraced by the complaint, and materials attached to the complaint.'" *See Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 280 n.52 (3d Cir. 2016) (quoting *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012), *cert. denied*, ___U.S.___, 137 S. Ct. 2296 (2017)). The burden of establishing the applicability of an affirmative defense rests with the defendant. *See In re Cmty. Bank of N. Va.*, 622 F.3d 275, 292 (3d Cir. 2010), as amended (Oct. 20, 2010).

The court also must apply the substantive laws of its forum state in diversity actions, including state statutes of limitations, s*ee Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007), as amended (July 19, 2007), as amended (Nov. 23, 2007), and "[i]n recognition of the unique dynamics between insurer and insured, courts have attempted to favor the insured in a number of ways, including adapting the *contra proferentem* principle of interpretation to the insurance context, by which ambiguities in policies are construed against the insurer[,]" s*ee Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 905 (3d Cir. 1997).

Here, Defendant has failed to meet its burden to show that the applicable Pennsylvania statutes of limitations bar Plaintiffs' claims. It is apparent on the face of the Amended Complaint that Plaintiffs' breach of contract and bad faith claims are timely: the facts alleged in the Amended Complaint, which must be accepted as true and all inferences from them construed in Plaintiffs' favor, show that Plaintiff's breach of contract and bad faith claims are timely. The Amended Complaint also alleges sufficient facts in support of a § 8371 claim against Defendant under federal notice pleading standards. Accordingly, Defendant's Motion must be denied.

**IV.  <u>ARGUMENT</u>**

**A.  Plaintiffs' Breach of Contract and Bad Faith Claims Were Timely Filed.**

**1.  Defendant's purported claim denial communications do not provide grounds to time-bar Plaintiffs' claims.**

An insurance coverage claim is deemed to be denied "where an insurer *clearly and unequivocally* puts an insured on notice that he or she will not be covered under a particular policy for a particular occurrence." *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1042-43 (Pa. Super. 1999) (emphasis added), *appeal denied*, 759 A.2d 381 (2000). The language contained in the Allied World claim communications discussed in Defendant's Motion did not amount to clear and unequivocal notice that each Plaintiff would not be covered under the Policy for all claims alleged by Markley, most notably legal malpractice. *See* Amend. Compl. ¶¶ 15-16, 19, 21, 23-24, 35 (discussing contents of Allied World's communications).

Unlike Allied World's communications to Plaintiffs, language that has been held to trigger the running of the statute of limitations includes:

- "[Insurer] hereby disclaims and denies any and all liability or obligation to you . . . . [Insurer] will take no further action with respect to any claim . . . and hereby withdraws from the matter entirely." *Adamski*, 738 A.2d at 1038;

- "We hereby rescind any insurance coverage . . . You should be aware that there is no insurance coverage for you, or anyone else, . . . Please accept this as full and final declination of coverage." *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 367 (E.D. Pa. 2009); and

- Language that the insurer would "take no further action" on the insured's request for coverage. *Wiseman Oil Co., Inc. v. TIG Ins. Co.*, 878 F. Supp. 2d 597, 605 (W.D. Pa. 2012) (comparing different language in *Simon Wrecking Co., Inc. v. AIU Ins. Co*, 350 F. Supp. 2d  624, 632-33 (E.D. Pa. 2004) where insurer's correspondence requesting "additional information" "was not a denial of coverage" but rather "a reservation of rights letter")).

Thus, Defendant's contention that it "disclaime[d] of coverage ten years ago – in March 2013 – for an underlying legal malpractice action against the Plaintiffs" (Def. Br. at 1) is simply not true. *See*  Def.'s Br. at 8 ("Both of Plaintiffs' causes of action are premised upon Allied World's disclaimer of coverage for the underlying legal malpractice claim in 2013.").

Notably, the February 11, 2013 email from David D'Angelo to Allied World, which precipitated Allied World's March 13, 2013 correspondence, discussed in Defendant's Motion, merely referenced a "potential claim" by Markley against his father and D'Angelo & Eurell.  *See* Amend. Compl. ¶ 15 and Feb. 11th Email (DI 5-4, pages 3-4 of 51).  David D'Angelo sent the email as required by the Policy's notice obligations for reporting potential claims.  *See* Policy, Ex. A to Am. Compl., at Section I, ¶ 3 (DI 7-1 at page 21 of 24).  And not only was there no legal malpractice action against Plaintiffs in March 2013, but Allied World's March 2013 communications did not provide clear and unequivocal notice that Plaintiffs would not be covered under the Policy.  Allied World's subsequent claim communications also did not provide that notice, conspicuously failing to address Markley's claims concerning David D'Angelo, among

11

other omissions: since the notice did not have or refer to any claims against David D'Angelo—the notice was only as to potential claims against George D'Angelo and D'Angelo & Eurell—Allied was not (or could not be) denying coverage of any (not yet asserted) claims against David D'Angelo.  *See* Amend. Compl. ¶¶ 15-16, 19, 21, 23-24, 35.  Defendant's argument that March 13, 2013 is the date that the respective statutes of limitations commenced must, therefore, be rejected.

> **2.** **Defendant has waived discussion of its failure to provide any coverage or defense assessments concerning David D'Angelo and D'Angelo & Eurell and its failure to acknowledge additional information Plaintiffs provided to it concerning the *Markley* Action, including Markley's October 2019 expert liability report.**

An argument must not be raised for the first time in a party's reply brief, and this includes reply briefs concerning a motion to dismiss.  *See Lett v. Se. Pa. Transp. Auth.*, No. 19-cv-3170, 2020 WL 12702548, at *2 n.2 (E.D. Pa. June 11, 2020) (refusing to address new statute of limitations argument raised for the first time in an amended reply brief) (citing *Baker v. Pa. Econ. League, Inc. Ret. Income Plan*, 811 F. Supp. 2d 1136 (E.D. Pa. 2011) (refusing to consider issues raised for the first time in a reply brief to a motion to dismiss); and *United States v. Martin*, 454 F. Supp. 2d 278, 281 n.3 (E.D. Pa. 2006) ("The Court declines to address any issue raised for the first time in a reply brief," which is "intended only to provide an opportunity to respond to the arguments raised in the response brief" and is "not intended as a forum to raise new issues.")).  Consequently, Defendant's failure to address the allegations in the Amended Complaint that (a) detail Defendant's failure to provide any coverage or defense assessments concerning David D'Angelo and D'Angelo & Eurell, and (b) detail Defendant's failure to acknowledge additional information Plaintiffs provided to it concerning the *Markley* Action, including Markley's October 2019 expert liability report (*see*, *e.g.*, Am. Compl. ¶¶ 25-31, 34-35, 38-41, 43-45, 47) cannot be

remedied by any argument in a reply brief and amount to waiver of such argument.  Defendant's
silence on these facts reinforces that it cannot support its statute of limitations arguments.

> **3.    Plaintiffs' breach of contract claim is not barred by the statute of limitations.**

Defendant argues that "[t]he statute of limitations for Plaintiffs' breach of contract cause
of action began to run on March 13, 2013, when Plaintiffs allege Allied World unequivocally
denied any obligation to pay **Claim Expenses** or **Damages** in connection with the Markley Claim."
Def.'s Br. at 13 (emphasis in original).   In support of this proposition, Defendant discusses various
inapposite cases and conflicting accrual standards.

*First*, Defendant conflates the statute of limitations accrual date for a § 8371 bad faith
action with the statute of limitations accrual date for a breach of contract action.  In particular,
Defendant cites *Sikirica v. Nationwide Ins. Co*., 416 F.3d 214 (3d. Cir. 2005) as purported authority
for the accrual date of a breach of contract action.  *See* Def.'s Br. at 8-9 and 14-15.  Defendant
cites to *Sikirica*, 416 F.3d at 25[sic] for the proposition that "[t]he statute of limitations begins to
run as of the date of the first denial, and continuing or subsequent denials do not trigger a new
statute of limitations."  Def.'s Br. at 8-9; *see also id.* at 14 (same proposition).  But the *Sikirica*
court only addressed the statute of limitations accrual date for the plaintiff's § 8371 bad faith claim
in that part of its opinion.  *See id.* at 223-25 (Section B. of the opinion).  Later in the opinion, the
court addressed the plaintiff's breach of contract claims, for which there was no statute of
limitations challenge, and thus, no statute of limitations discussion, to determine if the insurance
policy at issue covered certain conduct alleged in a class action complaint.  *See id.* at 225-26
(Section C. of the opinion).

However, *Sikirica* is instructive here on issues Defendant does *not* discuss, namely that
Pennsylvania adheres to a "four corners rule," meaning "[w]hether a claim is potentially covered

is answered by comparing the four corners of the insurance contract to the four corners of the [underlying] complaint." *Vitamin Energy, LLC v. Evanston Ins. Co.*, 22 F.4th 386, 392 (3d Cir. 2022) (noting a complaint need only contain "at least one allegation that falls within the scope of the policy's coverage" for the duty to defend to be triggered) (quoting *Erie Ins. Exch. v. Moore*, 228 A.3d 258, 265 (Pa. 2020)).  The *Sikirica* court accurately summarized the applicable coverage law:

> Under Pennsylvania law, an insurer has a duty to defend <u>if the complaint filed by the injured party potentially comes within the policy's coverage.</u> *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir.1985). The duty to defend is a distinct obligation, different from and broader than the duty to indemnify. . . Because the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend. . . After determining the scope of coverage under a policy, <u>the court must examine the complaint in the underlying action to determine whether it triggers coverage</u>. . . *Gen. Accident Ins. Co. of Am. v. Allen*, 547 Pa. 693, 692 A.2d 1089, 1095 (1997). If the complaint avers facts that might support recovery under the policy, coverage is triggered and the insurer has a duty to defend.  *Id.* Both the duty to defend and the duty to indemnify "flow from a determination <u>that the complaint triggers coverage</u>." *Id.*

*See id.* (emphasis added; some citations omitted).  The *Sikirica* court observed that a Pennsylvania writ of summons is insufficient to notify the defendant what the action is about:

> The model form for a general writ of summons under Pennsylvania law merely contains the plaintiff's name, the defendant's name, and notice that an action has been commenced, with the county, the date, the name of the prothonotary or clerk, and the deputy.  This is insufficient to notify the defendant "what the action is about."

*Id.* at 223 (finding the complaint, not the writ, was the initial pleading for analysis of removal deadline).  So too, here, the writ Markley filed in the *Markley* Action was insufficient to notify Plaintiffs what that action was about.  *See Writ*, (DI 1-4).

   *Second*, Pennsylvania law is clear that "[w]here a claim potentially may become one which is within the scope of the policy, the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its own peril."  *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr.*,

*Inc.*, 2 A.3d 526, 542 (Pa. 2010).  Further, "to the extent there are undetermined facts that might impact on coverage, the insurer has a duty to defend until the "claim is narrowed to one patently outside the policy coverage, for example through discovery."  *Moore*, at 265; *accord Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673-74 (3d Cir. 2016) (insurer owed owner a defense as an additional insured under application of Pennsylvania's four corners rule); *PECO Energy Co. v. Nationwide Mut. Ins. Co.*, 586 F. Supp. 3d 339, 344-46 (E.D. Pa. 2022) (same).

*Third*, it is well-established under Pennsylvania law that the limitations period with respect to a particular action begins to run at the time the cause of action accrues.  42 Pa. C.S.A. § 5502(a).  "In Pennsylvania, a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion."  *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 251 (Pa. 2021) (citation omitted).  "Generally, an action founded on a contract accrues when the contract is breached."  *Cottman Ave. PRP Grp. v. AMEC Foster Wheeler Envtl. Infrastructure Inc.*, 439 F. Supp. 3d 407, 432 (E.D. Pa. 2020) (quoting *Sadtler v. Jackson–Cross Co.*, 587 A.2d 727, 731 (Pa. Super. 1991)).

Here, Plaintiffs' breach of contract action is based on Allied World's breach of its duty to defend and indemnify Plaintiffs as required under the Policy.  *See*, *e.g.*, Am. Compl. ¶¶ 48-60.  Plaintiffs could not have maintained an action against Allied World to a successful conclusion until it first learned what the *Markley* Action was about, and whether Allied World was therefore obligated to and would provide a defense and indemnity for them.  Markley's complaint was not filed until October 29, 2014, and it contained Markley's first articulation of the nature of the claims she was asserting against Plaintiffs, including her legal malpractice claim (a covered claim under the Policy) against each of them.  As such, under the applicable Pennsylvania four corners rule described above, the *earliest* that Plaintiffs' breach of contract claim could be deemed to have

accrued against Defendant was when Plaintiffs received Defendant's *November 26, 2014* letter acknowledging receipt of Markley's complaint (*see* Amend. Compl. ¶ 21), if that letter could even be deemed to be adequate notice to Plaintiffs of Allied World's coverage and defense and indemnity positions, which for the reasons discussed in this brief and in the Amended Complaint, it clearly was *not* adequate notice.[3]

In sum, Plaintiffs' breach of contract claim against Defendant in this action, commenced by writ of summons on October 25, 2018, is timely under Pennsylvania's four-year statute of limitations for breach of contract actions.  Defendant's motion to dismiss the breach of contract claim on expiration of statute of limitations grounds must be denied.

---

[3] See especially, Am. Compl. at paragraphs 24 and 35:

> At no time did the Defendant Insurer advise any of the Plaintiffs that (a) it was providing a full and final declination of coverage as to any of them, (b) it was taking no further action with respect to the *Markley* Action, and (c) it was withdrawing from Plaintiffs' request for coverage regarding the *Markley* Action matter entirely and closing its file thereon.  Indeed, the Defendant Insurer's correspondence and communications with Plaintiffs continually requested that Plaintiffs keep it apprised of developments in the *Markley* Action, and Plaintiffs kept them so apprised.  (Para. 24); and

> With respect to David D'Angelo and D'Angelo & Eurell, Allied World's refusal to defend could only be adduced by its silence and inaction as the April 15, 2021 trial date in the *Markley* Action approached.  With the trial date approaching, Allied World had inexplicably failed to make any coverage or defense assessments concerning David D'Angelo or D'Angelo & Eurell, particularly after it received Markley's professional liability expert's report.  Or, if Allied World had made such an assessment, it failed to communicate its determination to Plaintiffs, leaving them in the dark as the Markley trial loomed.  As best as Plaintiffs can tell, Allied World still has not assessed its obligation to cover and defend each individual Plaintiff, evidently lumping them together as the "Insureds," rather than making the individual coverage determinations the Policy requires.  (Para. 35.)

4.      **Plaintiffs' bad faith claim is subject to multiple limitations periods and is not barred by the statute of limitations.**

Defendant wrongfully suggests that Plaintiffs' bad faith claim is limited to one event (a purported claim denial) and one limitations period. Def.'s Br. at 15-17. Defendant thus incorrectly argues that the statute of limitations governing Plaintiffs' bad faith claim expired on March 13, 2015, two years after the issuance of purported initial claim denial letter (a letter that provided a coverage discussion concerning *only George* D'Angelo). *Id.* at 16. Pennsylvania courts, however, have long drawn an "important distinction between an initial act of alleged bad faith conduct and later independent and separate acts of such conduct." *Rancosky v. Wash. Nat'l. Ins. Co.*, 130 A.3d 79, 99 (Pa. Super. 2015) (finding statute of limitations began to run on § 8371 bad faith claim when insurer communicated its refusal to consider new evidence that discredited basis for claim denial), *aff'd and remanded*, 170 A.3d 364 (Pa. 2017).

Although Defendant cites *Rancosk*y in its brief, it omits the relevant part of that decision, namely: "When a plaintiff alleges a subsequent and separately actionable instance of bad faith, distinct from and *unrelated to the initial denial of coverage, a new limitations period begins to run from the later act of bad faith*." *See* 103 A.3d at 99 (emphasis added) (citing *Adamski*, 738 A.2d at 1040). The *Rancosky* court explained that "[a]n inadequate investigation is a separate and independent injury to the insured." *Id.* (citing *Romano v. Nationwide Mut. Fire Ins. Co.*, 646 A.2d 1228, 1232 (Pa. Super. 1994) (holding bad faith conduct includes lack of good faith investigation)). The court also found that "a refusal to reconsider a denial of coverage based on new evidence is a separate and independent injury to the insured." *Id.* (citing *Condio v. Erie Ins. Exchange*, 899 A.2d 1136, 1145 (Pa. Super.) (holding, if evidence arises that discredits the insurer's reasonable basis for denying a claim, the insurer's duty of good faith and fair dealing requires it to reconsider its position and act accordingly, and noting the § 8371 good faith duty is an ongoing vital obligation

17

during the entire management of the claim), *appeal denied*, 912 A.2d 838 (Pa. 2006)).   The

*Rancosky* court confirmed that the limitations period for a bad faith claim has multiple trigger

dates:

> The statute of limitations for such injuries begins to run, in the first instance, when
> the insurer communicates to the insured the results of its inadequate investigation,
> and in the latter instance, when the insurer communicates to the insured its refusal
> to consider the new evidence that discredits the insurer's basis for its claim denial.

*Id.* (citing *Adamski*, 738 A.2d at 1040).

In this case, even if this Court were to accept Defendant's argument that it perfected a clear

and unequivocal claim denial as to George D'Angelo in 2013, which it must not do as described

above, Defendant cannot assert such an argument as to David D'Angelo and D'Angelo & Eurell

as no such denials were ever made.   Further, Plaintiffs have specifically alleged acts of bad faith

separate and distinct from claim denial on the part of Allied World as to each Plaintiff in this case.

*See*, *e.g.*, Am. Compl. ¶ 32--40, 42, 69-71, 74-75) (inadequate investigations) and ¶ 26-31, 35, 42-

43, 45, 70-71, 74-75) (failure to consider new information presented in October 2019 and other

times thereafter).

Markley's counsel provided Plaintiffs with an expert liability report in October 2019

prepared by a former Pennsylvania state trial court judge, who based on the record, including the

May 2019 deposition of David D'Angelo, opined, among other things, that David D'Angelo, who

was sued separately and individually, negligently advised or failed to advise Markley during

Plaintiffs' representation of her.   *Id.* ¶ 26.   Plaintiffs provided Allied World with a copy of

Markley's liability expert's report.   *Id.*   The expert's report specified that David D'Angelo

negligently advised or failed to advise Ms. Markley of certain information—the first time Markley

ever informed Plaintiffs of that alleged legal malpractice.   This opinion fits the definition of  a

"Wrongful Act, in  the Policy.   *Id.* ¶ 27.   Markley's liability expert's opinion did not fault the

18

D'Angelo & Eurell firm for conduct excluded by the Policy.  *Id.* ¶ 28.  Markley's liability expert's opinion did not fault David D'Angelo personally for conduct excluded by the Policy.  *Id.* ¶ 29 Markley's liability expert's opinion  stated that George D'Angelo engaged in different acts and/or omissions not excluded by the Policy.  *Id.* ¶ 30.  Nevertheless, Allied World failed to provide a defense for David D'Angelo and D'Angelo & Eurell throughout the duration of the *Markley* Action.  ¶ 31.

Additionally, in the trial of the *Markley* Action, of which Allied World had notice and refused to participate, Markley presented expert witness testimony asserting that each of the Plaintiffs, including David D'Angelo individually, had engaged in professional negligence, which testimony was consistent with the opinions set forth in written reports that had been provided to Allied World.  *Id.* ¶ 45.  Based on the trial evidence, the trial judge instructed the jury that they were to determine whether any of the Plaintiffs committed legal malpractice and permitted the jury to award punitive damages, if the jury found that the evidence warranted such an award.  *Id.*

Defendant's failure to address the requisite statute of limitations period for these separate and distinct claims amounts to waiver.  *See* Argument § 2 above.  In any event, the two-year statute of limitations applicable to Plaintiffs' bad faith claim based on Allied World's refusal to consider Markley's October 2019 expert liability report and subsequent information, including evidence presented during the 2021 trial in the *Markley* Action, obviously did not expire before Plaintiffs commenced this action by writ of summons in 2018.  Therefore, Plaintiffs have a viable bad faith claim.

### B.    Plaintiffs' Bad Faith Claim Sufficiently States a Cause of Action Against Defendant.

A defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted under § 8371.  *See Snider for Goldhirsh v. State Farm Fire & Cas.*

*Co.*, ___ F. Supp. 3d ___, No. 21-cv-4224, 2022 WL 17540210, at *3 (E.D. Pa. Dec. 8, 2022).  At the pleading stage, a plaintiff states a sufficient claim under § 8371 if the complaint "avers basic facts regarding the insurance policy, loss, and denial of the claim, as well as allegations that the insurer acted unreasonably." *Id.*, at * 3 (denying motion to dismiss § 8371 bad faith claim because amended complaint sufficiently "posited that Defendant—acting under an unreasonable interpretation of th[e] [insurance policy] provision and based on a blatant misrepresentation of the facts—denied coverage despite Plaintiff's evidence to the contrary") (citing *Scarpato v. Allstate Ins. Co.*, No. 05-cv-5520, 2007 WL 172341, at *5 (E.D. Pa. Jan. 23, 2007) (holding that complaint sufficiently pled a bad faith claim under the federal notice pleading requirement where complaint alleged that insurance company failed to conduct a reasonable investigation and asserted policy defenses without a reasonable basis); *Mezzacappa v. State Farm Ins. Co.*, No. 04-cv-5249, 2004 WL 2900729, at *1-2 (E.D. Pa. Dec. 14, 2004) (holding that plaintiff's allegations that the insurer's denial was unreasonable, lacked sufficient basis, and violated the terms of the insurance contract was sufficient to state a bad faith claim)); *see also Smith v. Allstate Ins.* Co., No. 21-cv-5048, 2022 WL 1460331, at *3-4 (E.D. Pa. May 9, 2022) (denying motion to dismiss § 8371 bad faith claim because complaint sufficiently described "who, what, where, when, and how the alleged bad faith conduct occurred" despite some conclusory averments; other averments asserted factual matter that gave rise to a reasonable inference that insurer denied policy benefits in bad faith).

Here, Defendant—myopically focusing exclusively on ¶¶ 61-67 and ¶¶ 69-70 of the Amended Complaint (*see* Def.'s Br. 18-19), and failing to acknowledge that ¶ 61 incorporated and included the prior averments of the Amended Complaint as part of Plaintiffs' bad faith claim— incorrectly contends that the Amended Complaint lacks sufficient factual support from which the Court can conclude that the bad faith standard was met and that Plaintiffs' bad faith claim must be

dismissed "with prejudice." *See id.* at 20.  In support of its flawed proposition Defendant cites two unreported decisions, *Jones v. Allstate Ins. Co.*, No. 17-cv-648, 2017 WL 2633472 (E.D. Pa. Jun. 19, 2017) and *Doyle v. Liberty Mut. Ins.*, No. 19-cv-3460, 2019 WL 4917123 (E.D. Pa. Oct. 4, 2019), that it argues addressed  complaints similar to Plaintiffs' Amended Complaint, and notes that the courts dismissed such bad faith claims at the pleading stage.  In those two cases, however, the bad faith allegations consisted of nothing more than barebone conclusory statements devoid of any factual content.  Here, by contrast, the Amended Complaint sets forth extensive facts that establish a plausible basis for a finding of bad faith.  *See* Am. Compl. ¶¶ 1, 4, 6, 8-47, 49-57, 61-79  Drawing all reasonable inferences in Plaintiff's favor, the Amended Complaint more than sufficiently alleges that Defendant (1) did not have a reasonable basis for denying the policy benefits, and (2) knew or recklessly disregarded its lack of reasonable basis when it denied the claim.  *See Rancosky*, 170 A.3d at 365 (discussing two required elements of a § 8371 claim).

Defendant also wrongly asserts that the paragraphs of the Amended Complaint referencing categories of violations under Pennsylvania's Unfair Insurance Practices Act, 40 Pa. C.S.A. § 1171.4, et seq. ("UIPA") (Am. Compl. ¶¶ 66-67) must be disregarded.  *See* Def.'s Br. at 18-19.  Pennsylvania appellate authority is to the contrary.  In *Romano*, the court held that when evaluating the conduct of an insurer under § 8371, the trial court "may look to (1) other cases construing the statute and the law of "bad faith" generally; (2) the plain meaning of the term(s) used in the statute; and/or (3) other statutes upon the same or similar subjects . . . ."  The court noted that conduct which constitutes a violation of the UIPA may also be considered when determining whether an insurer acted in bad faith under the statute.  646 A.2d at 1233.; *cf. O'Donnell ex rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901, 905-06 (Pa. Super. 1999) (noting bad faith conduct under § 8371 is a broad category, not limited to UIPA violations because § 8371 "was designed to remedy all

instances of bad faith conduct by an insurer, whether occurring before, during or after litigation"; thus, the court "refused to hold that an insurer's duty to act in good faith ends upon the initiation of suit by the insured").

Defendant has failed to meet its burden to show that dismissal of Plaintiffs' § 8371 bad faith claim is warranted. Plaintiffs have sufficiently pled a § 8371 bad faith claim against Defendant under Rule 12(b)(6) and Rule 8(a)(2) notice pleadings standards, but even if their pleading fell short of those standards, the appropriate remedy would be to allow Plaintiffs an opportunity to replead to cure any deficiencies, not a dismissal with prejudice as Defendant requests. Indeed, in the *Doyle* and *Jones* cases Defendant cites, the dismissals of the § 8371 bad faith claims were without prejudice, allowing plaintiffs to file an amended complaint to cure the pleading deficiencies. *See Doyle*, 2019 WL 4917123, at *2; *Jones*, 2017 WL 2633472, at *3. The *Dietz* and *Jack* decisions Defendant cites in footnote 6 of its brief also provide the same relief. *See Dietz v. Liberty Mut. Ins. Co.*, No. 20-cv-1239, 2020 WL 3414660, *4 (E.D. Pa. June 22, 2020) (Rule 12(b)(6) motion granted without prejudice with leave to replead); *Jack v. State Farm Fire & Cas. Co.*, No. 2017 WL 945031, *4 (E.D. Pa. Mar. 3, 2017) (same); *see also Chacko v. Sigmapharm Labs.*, No. 22-cv-2336, 2023 WL 2330419, at *1, *7 (E.D. Pa. Mar. 2, 2023) (Murphy, J.) (granting plaintiff leave to replead FMLA interference claim dismissed without prejudice on Rule 12(b)(6) motion).

Accordingly, Defendant's motion to dismiss Plaintiffs' bad faith claim under Rule 12(b)(6) must be denied.

**V.**     **CONCLUSION**

Plaintiffs' breach of contract and bad faith claims are timely and their bad faith claim is legally sufficient to put Defendant on notice of the § 8371 claim asserted against it.  Hence, Plaintiffs respectfully request that this Court deny Defendant's Motion.


Dated: March 14, 2023                     **McSHEA LAW FIRM, P.C.**

                                    By:  *s/ John P. McShea*
                                        John P. McShea (PA 34562)
                                        Conrad O. Kattner (PA 35468)
                                        Ralph J. Kelly (PA 39706)
                                        1500 Market Street, 40th Floor
                                        Philadelphia, PA 19102
                                        Tel. (215) 599-0800
                                        Fax (215) 599-0888
                                        JMcShea@mcshealawfirm.com
                                        CKattner@mcshealawfirm.com
                                        RKelly@mcshealawfirm.com

                                        *Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that on this 14th day of March, 2023, I electronically filed the foregoing Response of Plaintiffs in Opposition to Defendant's Motion to Dismiss the Amended Complaint and accompanying Brief using the *CM/ECF* system, which will automatically send email notification of such filing to all counsel of record in the above-captioned action.

<u>*s/ John P. McShea*</u>
John P. McShea