IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| D'ANGELO & EURELL, DAVID S. D'ANGELO, DAVID S. D'ANGELO AND CHRISTOPHER S. D'ANGELO, CO-EXECUTORS OF THE ESTATE OF GEORGE D'ANGELO, DECEASED, FOR HIMSELF AND TRADING AS D'ANGELO & EURELL | : : : : : : : : : | CIVIL ACTION |
| v. | : : | NO. 23-397 |
| ALLIED WORLD SPECIALITY INSURANCE COMPANY | : : : | |

## MEMORANDUM

**MURPHY, J.**                                                                                             **November 16, 2023**

      This is a legal malpractice insurance coverage dispute. After a trial against all three plaintiffs, a jury found one of them liable for legal malpractice and awarded $600,000 to his former client. But years before that, the plaintiffs sought coverage from their legal malpractice carrier. The insurance company repeatedly denied coverage — hence this lawsuit. We are here now on a motion to dismiss. The insurance company says that plaintiffs' claims are barred by Pennsylvania's four-year statute of limitations for breach of contract. The insurance company has a point because they did issue several denial letters more than four years before this lawsuit started. But we deny the motion to dismiss because on the current record, the insurance company has not shown that the denials extended to legal malpractice claims — focusing instead on misappropriation claims, which the insurance company said were excluded from the policy. We also hold that plaintiffs stated an adequate claim of bad faith.

    **I.**    **Background**

      The plaintiffs in this case are a law firm, D'Angelo & Eurell; one of its members, David

S. D'Angelo; and the estate of one of its deceased members, George A. D'Angelo. DI 7 ¶¶ 2-4.[1] All three were insured under a professional liability insurance policy issued by defendant Allied World.[2] *Id.* ¶ 2-4, 6, 8-9. This is a coverage dispute arising from a legal malpractice suit against plaintiffs known as the Markley Action.[3] Because this motion turns on the statute of limitations, the timeline of events leading to the Markley Action and this case is important. For reference, this case — the coverage dispute — was removed here, and traces back to the Court of Common Pleas of Philadelphia on October 25, 2018. DI 1 ¶ 1; DI 1-4. Thus, because of Pennsylvania's four-year statute of limitations for breach of contract actions, the parties are keenly interested in what happened with the Markley Action before October 25, 2014.

On December 22, 2012, an attorney named Bruce Washawsky apparently sent an e-mail to D'Angelo & Eurell alleging that George D'Angelo mishandled Ms. Markley's trust account and owed Ms. Markley $1.7 million. DI 5-4 at 7 (ECF).[4] In February 2013, David D'Angelo

---

[1] We draw the facts from the Amended Complaint (DI 7) and its attachments, as well as attachments to the motion to dismiss. We may consider matters of public record, orders, exhibits attached to the complaint, and undisputedly authentic documents attached to the complaint or motion dismiss where, as here, plaintiffs' claims are based on those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Note that pursuant to our policies and procedures, defendant did not refile DI 5-4 after the original motion to dismiss was mooted, instead appropriately relying on the copy already on the docket.

[2] "Allied World was formerly known as Darwin National Assurance Company and/or is the successor to Darwin National Assurance Company." *Id.* ¶ 5. Certain documents, such as the policy, refer to Darwin, but for simplicity's sake, we will stick with Allied World.

[3] "*Lisa Markley v. D'Angelo & Eurell, et al.*, initially filed in the Dauphin County Court of Common Pleas, No. 2013-cv-3010, and transferred to the Philadelphia County Court of Common Pleas, June Term 2017, No. 611." DI 7 ¶ 14.

[4] The record does not include a copy of Mr. Warshawsky's e-mail. Nor does the

sent the following message to Allied World regarding the policy and a "potential" claim against two of the three plaintiffs:

> I am writing to provide Notice of a Potential Claim for Damages made against D'Angelo & Eurell and George A. D'Angelo, insureds under the above-referenced Policy.
>
> The claimant, Lisa Markley, through her counsel, Bruce Warshawsky, Esquire, is asserting that due to the acts, errors or omissions of your insured in the exercise of his responsibilities in providing Legal Services, including without limitation as attorney and otherwise as a fiduciary, claimant's assets were administered negligently or improperly, resulting in losses. Kindly provide coverage and a defense to this Claim. I look forward to hearing from you and to discuss who should be appointed as counsel to handle the matter.

*Id.* at 4 (ECF).

In relevant part, the policy requires Allied World to pay damages and claim expenses "because of a Claim arising out of a Wrongful Act." DI 7-1 at 9 (ECF). Further, subject to various limitations, Allied World "shall have the . . . duty to defend any Claim seeking Damages that are covered by this Policy and made against an Insured even if any of the allegations of the Claim are groundless, false or fraudulent." *Id.* Under the policy, a Claim is defined as:

> 1. any written notice or demand for monetary relief or Legal Services;
>
> 2. any civil proceeding in a court of law;
>
> 3. any administrative proceeding, other than a Disciplinary Proceeding; or
>
> 4. a request to toll or waive a statu[t]e of limitations;
>
> made to or against any Insured seeking to hold such Insured responsible for damages for a Wrongful Act.
>
> A Claim does not include criminal proceedings of any type, or any proceeding that seeks injunctive, declaratory, equitable or non-pecuniary relief or remedies of

---

amended complaint mention the e-mail. Our characterization of the e-mail comes from Allied World's later response to David D'Angelo.

any type.

*Id.* at 11 (ECF).  The Wrongful Act mentioned in the definition for Claim is defined as:

> 1. an actual or alleged act, error or omission by an Insured, solely in the performance of or failure to perform Legal Services;
>
> 2. an actual or alleged Personal Injury committed by any Insured, solely in the performance of or failure to perform Legal Services; or
>
> 3. a Non-Profit Director and Officer Wrongful Act.

*Id.* at 14 (ECF).

Following some telephone conversations, on March 13, 2013, Allied World responded. DI 5-4 at 6-10 (ECF).  First, Allied World recited its understanding of the Markley dispute as stemming from allegations that George D'Angelo took funds from Ms. Markley's trust account. *Id.* at 6-7 (ECF).  Then, Allied World confirmed that George D'Angelo was insured because he was "a named partner at D'Angelo & Eurell," and confirmed that the demand letter "constitutes a Claim against an Insured arising out of a Wrongful Act, that is first made during the Policy Period." *Id.* at 9 (ECF).  Allied World's response continued:

> Although this email from Attorney Warshawsky constitutes a Claim, Darwin must nevertheless deny coverage since this Claim is specifically excluded under the Policy.  Pursuant to Sections III(B)(2) and (10) of the Policy, there is no coverage for any " Claim. . . based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, in whole or in part:
>
> 2. any act whatsoever of an Insured in connection with a trust or estate when an Insured is a beneficiary or distribute of the trust or estate.
>
> 10. the loss of value of any asset in the Insured's care, custody or control, misappropriation, conversion, embezzlement, failure to give an accounting, or commingling of client funds."
>
> Ms. Markley, through her attorney, alleges that your father took funds from her trust account from approximately 2008-2012, and therefore violated the Rules of Professional Conduct.  This trust fund was in your father's care, custody and control.  The exact amount of funds that your father took from Ms. Markley's

4

> account is in dispute. As such, Darwin denies this Claim in its entirety because this Claim is specifically excluded under Sections III.B.2 and/or III.B.10 of the Policy. . . .
>
> Based on this threshold bar to coverage under Sections III(B)(2) and (10) of this Policy, Darwin has not undertaken an in-depth analysis of all other coverage issues presented by this matter at this time. Darwin continues to reserve all of its rights under the Policy and applicable law. Darwin's position with respect to this matter is based on the information provided to date, and is subject to further evaluation as additional information becomes available. Darwin respectfully reserves all of its rights and defenses under the Policy and available at law, including the right to assert additional policy terms and provisions which may become applicable as new information is learned.
>
> If you have any questions regarding our position or if you feel there is additional information we should consider, please feel free to contact me.

*Id.* at 9-10 (ECF). Allied World apparently conducted further review and sent David D'Angelo another letter on March 29, 2013. *Id.* at 12-17. The second letter added a third reason why coverage would be excluded (claims arising out of investment advice) and concluded in similar fashion:

> For the reasons discussed above, Darwin has concluded that there is no coverage under the Policy for the Markley matter. To the extent that the Firm disagrees with Darwin's understanding of the facts or Darwin's conclusion that no coverage is available or if the Firm has additional information relevant to Darwin's analysis of coverage with respect to the matter . . . please provide that information to us for Darwin's consideration.

*Id.* at 17 (ECF).

On April 5, 2013, Ms. Markley filed a praecipe to issue a writ of summons[5] in the Markley Action, which was shared with everyone concerned. DI 7 ¶ 17. The praecipe identified the defendants (all three plaintiffs in this case), but described the action categorically by checking a box entitled "Professional Liability . . . Other Professional" and filling in

---

[5] *See* Pa. R. Civ. P. 1007 ("An action may be commenced by filing with the prothonotary: (1) a praecipe for a writ of summons . . . .");

"contract/negligence/accounti."[6]  DI 5-4 at 21-22 (ECF).  There was a box for "Legal" under the heading "Professional Liability," but it was unchecked.  *Id.*  On the same day, Ms. Markley's (new) lawyer, Andrew W. Barbin, sent a colorful letter[7] to David and George D'Angelo explaining the nature of the anticipated lawsuit — "[n]egligence, nonfeasance, misfeasance, breach of fiduciary duties, statutory and regulatory violations, malpractice, and fraud" — which was also forwarded to Allied World.  *Id.* at 24-30; DI 7 ¶ 17; DI 5-4 at 32 (ECF) (forwarding the demand letter and stating that Ms. Markley "is continuing to press malpractice claims, which are clearly covered by our policy").  Mr. Barbin's letter alleged a variety of improprieties by David D'Angelo, such as that "David and the firm have materially aided in the deception and have intermingled funds" and stated that the anticipated litigation "will not be limited to George in either his legal or financial capacity; but includes him in all capacities as well as David and the firm."  DI 5-4 at 26, 28 (ECF).

On April 18, 2013, Allied World responded again and reaffirmed denial of coverage:

> Darwin must reaffirm its previous determination that no coverage is available under the policy for the Markley matter.  If, however, Ms. Markley does file the lawsuit threated in the April 5 letter, please provide a copy to us immediately so that Darwin may evaluate the availability of coverage for the lawsuit in light of its specific allegations.

DI 5-4 at 36-39 (ECF) (reviewing the allegations of the April 5 letter and denying coverage for the same reasons as before).

On May 20, 2013, Ms. Markley filed a praecipe to reissue or reinstate the writ of

---

[6] There is a small plus sign at the end of the line suggesting that more was filled in after "accounti" but the printed version of the form does not show what that might be.

[7] It contains, among other things, more quotes from Shakespeare's Henry V than one might ordinarily find in a demand letter.

summons, and served it on plaintiffs on June 12, 2013.  DI 7 ¶ 18.  David D'Angelo forwarded the summons to Allied World.  DI 5-4 at 43 (ECF).  Allied World responded by asking if a complaint had been served along with the summons (it had not) and writing: "[a]s we stated in our April 18, 2013 correspondence, Darwin will need a copy of the complaint, or any other communications you have received since our April 18 correspondence, to assess the availability of coverage under the Policy for this matter."  *Id.* at 42 (ECF).

Ms. Markley filed the complaint in the Markley Action on October 29, 2014.  DI 7 ¶ 20.  The next month, Allied World denied coverage after reviewing the complaint.  DI 5-4 at 45-51.  The complaint and that last denial are too late to help defendant with its four-year statute of limitations defense because plaintiffs initiated this coverage litigation on October 25, 2018.

A jury found that George D'Angelo had committed legal malpractice and that his estate was liable to Ms. Markley for $600,000.  DI 7 ¶ 44.

## II.  Analysis

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility."  *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  "The court must take the complaint's factual allegations as true.  But it may disregard labels, conclusions, and formulaic recitations of the elements."  *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) (quotation omitted).  Although reliance on the statute of limitations is an affirmative defense, we may decide the issue on a motion to dismiss so long as we rest our analysis on plaintiffs' allegations and the accompanying documents of

7

undisputed authenticity.  *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017); *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 280 n.52 (3d Cir. 2016).

### A. On the record and posture of the motion to dismiss, plaintiffs' breach-of-contract claims are not time-barred.

The parties agree that Pennsylvania law applies here, and it provides for a four-year statute of limitations for breach of contract.  42 Pa. Stat. and Cons. Stat. § 5525(a)(8); *Selective Way Ins. Co. v. Hosp. Grp., Serv.'s, Inc.*, 119 A.3d 1035, 1047 (Pa. Super. Ct. 2015) (en banc) (noting the same applies for a "declaratory judgment actions concerning the parties' rights and duties under a written contract").  "The statute of limitations for a cause of action begins to run from the time the cause of action accrued.  In Pennsylvania, a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion."  *Id.* (quotations and citations omitted).  That is not a bright-line rule, but we agree with Judge Stickman that this is nonetheless what the Pennsylvania courts are aiming for.  *See Allegheny Ludlum, LLC v. Liberty Mut. Ins. Co.*, 487 F. Supp. 3d 350, 355-60 (W.D. Pa. 2020) (discussing *Selective Way* in detail).

The parties essentially agree on this starting point, and further agree that the plaintiffs' cause of action accrued when Allied World denied coverage (i.e., when performance was allegedly due).  *See* DI 7-1 at 9 (ECF).  And as laid out above, in its letters, Allied World clearly denied *something* before October 25, 2014.  We do not put much stock in plaintiffs' argument that Allied World never really denied anything because its letters always ended with something to the effect of "if you have additional information, please send it to us and we will consider it."  What reasonable insurance company would refuse new information?  Also, we note that Allied World's post-Markley-complaint letter of November 26, 2014 — which even plaintiffs concede is a full and effective denial of coverage — ends with "if the Firm has additional information

8

relevant to Darwin's analysis of coverage with respect to this matter, please provide that information to us.  Darwin will give it careful and prompt consideration." DI 5-4 at 51 (ECF). Plaintiffs argue that to start the statute of limitations running, the insurer must "clearly and unequivocally" deny coverage, but they rely on bad-faith cases — from before *Selective Way* — dealing with the question of whether repeated denials give rise to separate acts of bad faith. *See* DI 14 at 10-11 (citing *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 367 (E.D. Pa. 2009); *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1042-43 (Pa. Super. Ct. 1999). We doubt that "clear and unequivocal" denial is a good proxy for *Selective Way*'s inquiry into when the plaintiff could have first maintained the action to a successful conclusion.  Even if it were, the "will consider additional information" qualifier would not change our conclusion.

      Setting that argument aside, the real dispute here is coverage and denial **of what exactly**? Allied World argues that the statute of limitations began to run as of March 13, 2013 — the first denial of coverage — which would preclude plaintiffs' claims for breach of contract in this case. Allied World reasons that David D'Angelo's February 11, 2013 e-mail was a Claim for Damages under the policy, and Allied World's March 13, 2013 response was non-performance under the policy, which in turn was when the plaintiffs would have had the right to institute and maintain a breach of contract suit.  DI 13-1 at 9-10.  That seems simple enough, but the plaintiffs argue that the pre-Markley-complaint record reflects requests and denials related only to the misappropriation of funds, and not to legal malpractice of any kind — and certainly not David D'Angelo's legal malpractice (which was later implicated in the Markley Action).  As such, plaintiffs reason, the statute of limitations could not have begun to run on legal malpractice coverage until that claim surfaced when the Markley complaint was ultimately filed.

It's close, but the current record affords plaintiffs just enough leeway to forestall dismissal. First, the record reflects a real distinction between misappropriation and legal malpractice — starting with the policy itself. The policy generally covers injuries arising from malpractice, DI 7-1 at 1 (ECF), but then lists as one of its exclusions: "the loss of value of any asset in the Insured's care, custody or control, misappropriation, conversion, embezzlement, failure to give an accounting, or commingling of client funds," *id.* at 16. And indeed Allied World specifically relied on the distinction between malpractice and misappropriation (among other exclusions) when it denied coverage. Allied World characterized the allegations as George D'Angelo "t[aking] funds from [Markley's] trust account" and on that basis "denie[d] this Claim in its entirety because this Claim is specifically excluded." DI 5-4 at 9 (ECF).

Second, a careful look at the record shows that malpractice coverage was never denied until after October 25, 2014. The word malpractice never came up at all until the Barbin letter of April 5, 2013. The Barbin letter focuses almost entirely on misappropriation, and leaves considerable ambiguity at that. DI 5-4 at 24-30 (ECF). It mentions "malpractice" but only at the end of a sentence starting with "negligence, nonfeasance, misfeasance." *Id.* at 27 (ECF). And it never explores or explains what legal malpractice may have occurred. Furthermore, the Barbin letter accompanied the praecipe for writ of summons, which gave the distinct impression that legal malpractice was ***not*** at issue because it left the "Professional Liability – Legal" box unchecked and instead checked the "Other Professional" box. *Id.* at 21 (ECF). It is true that when David D'Angelo forwarded the Barbin letter to Allied World, he wrote that Markley "is continuing to press malpractice claims," *id.* at 32 (ECF), but Allied World's response never mentioned this, instead again characterizing the Markley matter as relating to uncovered

10

misappropriation claims, *id.* at 36-39 (ECF).[8]  Drawing inferences in favor of the plaintiffs, as we must, it appears that Allied World did not see the presence of malpractice claims in the Markley matter and thus did not deny coverage of malpractice claims in response to the Barbin letter.[9]

Finally, contrary to Allied World's argument that its invocation of the "Markley matter" in its denials subsumes all possible claims, the presence of different types of claims matters under the insurance policy.  The duty to defend is triggered by an appropriate Claim, which includes "any written notice or demand for monetary relief or Legal Services . . . made to or against any Insured seeking to hold such Insured responsible for damages for a Wrongful Act." DI 7-1 at 11 (ECF).  And a Wrongful Act, in turn, includes "an actual or alleged act, error or omission by an Insured."  *Id.* at 14 (ECF).  Thus, the policy contemplates separate Claims for separate Wrongful Acts, some of which might be covered and some of which might not be.[10]  At

---

[8] The record reflects a second, but related, distinction relating to David D'Angelo.  The exchanges between David D'Angelo and Allied World never mentioned any allegations against David D'Angelo personally — only George D'Angelo and the firm — until David D'Angelo sent the Barbin letter and the praecipe to Allied World.  But again, in response, Allied World did not recognize that allegations were made against David D'Angelo personally, and the denial related only to George D'Angelo and the firm.  DI 5-4 at 36-39 (ECF).

[9] To the extent that Allied World assiduously avoided mentioning "malpractice" in its denials to bolster the basis for its denial, and that now works in plaintiffs' favor in overcoming the statute of limitations — sometimes you reap what you sow.

[10] The policy arguably applies its exclusions broadly, for example by providing that it "shall not apply to any Claim . . . **based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, in whole or in part** . . . misappropriation." DI 7-1 at 15-16 (ECF) (emphasis added).  But Allied World did not argue the point, and for purposes of a motion to dismiss on a limited record, we lack sufficient clarity to grant the motion on that basis.

least for purposes of denying the motion to dismiss, that appears to be the situation. The phrase "Markley matter" carries no special meaning other than what the rest of the record and the allegations in the complaint suggest at any given time.

For those reasons — and combining the allegations of the amended complaint and the record evidence, and drawing reasonable inferences in plaintiffs' favor — we conclude that the statute of limitations for breach of contract did not begin run until after October 25, 2014, and therefore deny Allied World's motion to dismiss on that basis.[11]

### B. Plaintiffs adequately pled bad-faith denial of coverage.[12]

Bad-faith claims are statutory:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Stat. and Cons. Stat. § 8371. Pennsylvania courts apply "a two-part test, both elements of which must be supported with clear and convincing evidence: (1) that the insurer lacked a

---

[11] This opinion should not be read to prejudge the issue of coverage itself. Nor does it necessarily foreclose Allied World's affirmative defenses based on the statute of limitations. Our analysis here is based on the record we have and constrained by the lens of Rule 12.

[12] Allied World also argued that the bad-faith claims should be dismissed under the 2-year statute of limitations of 42 Pa. Stat. and Cons. Stat. § 8371; *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 224 (3d Cir. 2005). But Allied World relies entirely on the March 13, 2013 date that we have explained did not trigger the statute of limitations. DI 13-1 at 15-17. There may well have been occasions after October 25, 2014 that triggered the statute of limitations, but Allied World did not rely on those in its bad-faith argument. For the same reasons, plaintiffs' suggestion that its bad faith claim is subject to multiple limitations period need not be addressed at this time. Thus, we deny the motion to dismiss the bad faith claims as time barred.

reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)).

Allied World argues that the bad-faith allegations of the amended complaint are merely conclusory. We disagree. Barebones allegations of bad faith accompanying a coverage suit are regularly denied where they lack explanatory facts. *See Snider for Goldhirsh v. State Farm Fire and Cas. Co.*, 644 F. Supp. 3d 141, 146-47 (E.D. Pa. 2022) (collecting cases). But here, among other things, plaintiffs allege that Allied World's denial letters reflect a lack of analysis and failure to address key issues or adequate explanation for denial, and that Allied World failed to respond to a copy of Markley's liability expert report (relating to legal malpractice), which ultimately was the basis of key trial testimony. DI 7 ¶¶ 34-45. Bad faith may extend to "a lack of investigation, unnecessary or unfounded investigation, failure to communicate with the insured, or failure to promptly acknowledge or act on claims." *Ironshore Specialty Ins. Co. v. Conemaugh Health Sys., Inc.*, 423 F. Supp. 3d 139, 154–55 (W.D. Pa. 2019) (citing *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999)). Extending plaintiffs the reasonable inferences to which they are entitled, the amended complaint states a claim for bad faith.

### III. Conclusion

For the reasons discussed, we deny Allied World's motion to dismiss. This case will move into discovery.