IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| D'ANGELO & EURELL, DAVID S. D'ANGELO, DAVID S. D'ANGELO AND CHRISTOPHER S. D'ANGELO, CO-EXECUTORS OF THE ESTATE OF GEORGE A. D'ANGELO, DECEASED, FOR HIMSELF AND TRADING AS D'ANGELO & EURELL | : CIVIL ACTION : : : : : : : |
| v. | : NO. 23-397 |
| ALLIED WORLD SPECIALITY INSURANCE COMPANY | : : : |

# MEMORANDUM

**MURPHY, J.**                                                                  August 21, 2025

      Though this matter began as a straightforward insurance dispute, it is now before us in a somewhat unusual procedural posture. Plaintiffs D'Angelo & Eurell, David D'Angelo, and the Estate of George D'Angelo sued their malpractice insurance provider, Allied World Specialty Insurance Company, for breach of contract and bad faith. Over the course of two years of litigation, we denied Allied's motion to dismiss and motion for summary judgment. A few weeks before trial, Allied filed a motion to dismiss for lack of subject-matter jurisdiction and five motions *in limine* that raised for the first time — or reraised, but with more clarity and detail — various legal issues. On June 5, 2025, we granted three of these motions and asked plaintiffs why judgment should not be entered in favor of Allied. After conferring, the parties agreed (as do we) that our June 5 order effectively disposed of plaintiffs' case, and no triable issues remain for a jury. We write now only to enter final judgment in Allied's favor and provide a complete record of our basis for doing so.

I.   **FACTUAL BACKGROUND[1] AND PROCEDURAL HISTORY**

D'Angelo & Eurell applied for a lawyers professional liability insurance policy from Allied World Specialty Insurance Company. *See* DI 49-5 at 144 (ECF); DI 7 at 2. David D'Angelo and his father, George D'Angelo, were lawyers listed on the application. DI 49-5 at 144 (ECF). Allied issued a policy for the period from August 20, 2012 through August 20, 2013 ("the policy"). DI 7 at 2; *see* DI 49-5 at 5-28 (ECF).

The policy insured plaintiffs up to $500,000 per "Claim." DI 49-5 at 5 (ECF). Exclusion B.10 of the policy excluded from coverage "any Claim or Disciplinary Proceeding based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, in whole or in part . . . misappropriation, conversion, embezzlement, failure to give an accounting, or commingling of client funds." *Id.* at 18-19 (ECF).

The policy contained the following "Related Acts" provision:

> All Claims based upon or arising out of the same Wrongful Act or Related Act or Omission shall be considered a single Claim and shall be considered first made at the time the earliest Claim arising out of such a Related Act or Omission was first made. All Damages and Claims Expenses from such Claims shall be subject to one limit of liability.

*Id.* at 20 (ECF). And it defined "Related Act or Omission" as "[a]ll acts or omissions based on, arising out of, directly or indirectly resulting from, or in any way involving the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events." *Id.* at 17 (ECF).

Beginning in June 2012, George and David D'Angelo exchanged multiple

---

[1] We derive these facts from Allied's version of facts, if undisputed by plaintiffs, and otherwise from plaintiffs' version of facts. *See* DI 7; DI 49-2; DI 50-2.

2

communications with counsel for Lisa Markley, George D'Angelo's former client, regarding George's alleged mishandling of Markley's assets and accounts. DI 49-2 ¶¶ 13-15, 18-23, 25, 27-28, 30, 34. David D'Angelo acted as legal counsel for George D'Angelo during these communications. *Id.* ¶ 15. On February 11, 2013, David D'Angelo submitted a "Notice of Potential Claim for Damages" to Allied. *Id.* ¶ 35; DI 50-2 at 47 ¶ 28. Allied repeatedly denied coverage for the Markley matter based in part on Exclusion B.10. DI 49-2 ¶¶ 42-43, 49-50, 61.

On April 5, 2013, Markley commenced a lawsuit against plaintiffs in Dauphin County Court of Common Pleas. DI 50-2 at 49 ¶¶ 43-44. Her amended complaint asserted six causes of action for professional negligence, breach of fiduciary duties, fraud, breach of contract, theft and/or conversion, and vicarious liability/civil conspiracy. *Id.* at 51 ¶ 62; DI 75 at 154-160 (ECF).

Allied reaffirmed its denial of coverage and did not retain an attorney to represent plaintiffs in the Markley action. DI 50-2 at 48 ¶ 38, 51-52 ¶ 63. The case went to trial. *Id.* at 55 ¶ 93. A jury found George D'Angelo[2] liable for breach of a professional duty of care owed in the performance of legal services, breach of fiduciary duty, conversion, and breach of contract, and awarded Markley $600,000 in damages. DI 75 at 71-77 (ECF). It found David D'Angelo and D'Angelo & Eurell not liable. *See id.*

Plaintiffs sued Allied here on January 31, 2023. *See* DI 1. The amended complaint alleges that Allied breached the policy and acted in bad faith by failing to defend plaintiffs against Markley's malpractice claims or indemnify them for the legal fees and costs incurred in

---

[2] George D'Angelo died before the Markley trial. DI 50-2 at 53 ¶ 73.

3

defending the Markley action.³  DI 7 at 1, 12.  Allied filed a motion to dismiss the amended complaint as time-barred, which we denied.  DI 13; DI 25.  On July 26, 2024, Allied filed a motion for summary judgment.  DI 49.  As we noted in our order denying the motion, Allied raised various legal issues but did not clearly articulate which arguments entitled it to summary judgment.  DI 54 at 1.⁴  Allied filed a motion to partially reconsider our order denying the motion for summary judgment, which we also denied.  DI 58; DI 61.⁵

In the lead-up to trial, Allied filed motions *in limine* that raised some new issues and reraised — this time, with more clarity and detail — some of the issues from summary judgment.  Specifically, Allied argued that plaintiffs should be precluded from (1) presenting evidence or argument regarding emotional distress damages, DI 70; (2) introducing the $600,000 trial judgment against George D'Angelo as evidence of damages, DI 71; (3) presenting evidence or argument that Markley's allegations constituted more than one claim subject to a single liability limit of $500,000, DI 72; and (4) offering evidence or argument of bad faith

---

³ Plaintiffs accept that Markley's misappropriation claims against George D'Angelo are excluded under the policy, but they argue that Markley's legal malpractice claims asserted against George D'Angelo and David D'Angelo are covered by the policy.  *See* DI 50-1 at 16-17.

⁴ Specifically, Allied argued that Exclusion B.10 barred coverage for Markley's claims, but we "s[aw] a fact question as to whether the malpractice claims . . . were 'based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, in whole or in part,' Markley's allegations of misappropriation."  DI 54 at 3; *see* DI 49-3 at 16-18.  Similarly, though Allied argued that the Markley matter constituted a single "claim" under the contract, it failed to explain how this issue would affect the outcome of the case.  DI 54 at 3-4; *see* DI 49-3 at 18-21.  As we saw it then, "the [plaintiffs'] acts may or may not be related, depending on how the jury views them."  DI 54 at 4.

⁵ The motion for reconsideration concerned the question of whether plaintiffs' claims were time barred under the applicable statute of limitations.  *See* DI 58-2.

4

conduct pre-dating October 25, 2016, DI 73.[6]  Allied also filed a motion to dismiss for lack of subject-matter jurisdiction, arguing that D'Angelo & Eurell is not a real legal entity and thus lacks standing to sue.  DI 84.

We heard oral argument on Allied's motions at the final pre-trial conference on June 4, 2025.  On June 5, we issued an order granting motions *in limine* nos. 2 and 3 and the motion to dismiss as to plaintiff D'Angelo & Eurell only.  *See* DI 98.  While the June 5 order did not direct final judgment in favor of Allied, we ordered plaintiffs to "file a memorandum briefly explaining why judgment in favor of defendant should not be entered (and conversely, what issues remain to be tried)."  *Id.* at 11-12.  After a series of filings, the parties stipulated that our June 5 order "effectively eliminate[d] all factual and legal questions and enter[ed] summary judgment" for defendant.  DI 105 at 1; *see also* DI 100; DI 101.  Plaintiffs do not oppose entry of final judgment in light of the June 5 order but expressly reserve their right to appeal.  DI 105 at 1-2.[7]

## II.   STANDARD OF REVIEW

In line with the parties' requests, we will construe this judgment as a grant of summary judgment under Rule 56.[8]  Summary judgment is appropriate "if the movant shows that there is

---

[6] Allied filed a fifth motion *in limine* "with respect to general trial matters" that requested entry of an order directing that certain matters, such as Allied's net worth or involvement in other cases, not be mentioned before the jury.  DI 74.

[7] In other words, while plaintiffs disagree with the adverse rulings in the June 5 order, they do not oppose entry of final judgment in favor of Allied in light of the June 5 order.  DI 105 at 1.

[8] Both in a written request filed after the stipulation, and verbally at a June 16, 2025 case management conference, Allied requested that the court enter final judgment pursuant to Rule

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, we must "view the record and draw inferences in a light most favorable to the non-moving party." *In re Ikon Off. Sols., Inc.*, 277 F.3d 658, 666 (3d Cir. 2002). We ask "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"A court may grant summary judgment to a non-moving party, as long as the opposing party has notice and an opportunity to respond." *Lee v. Sixth Mount Zion Baptist Church of Pittsburgh*, 903 F.3d 113, 118 (3d Cir. 2018); *see* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.").

Here, plaintiffs had ample notice and opportunity to respond. They filed responses to Allied's motion for summary judgment, motions *in limine*, and motion to dismiss for lack of subject-matter jurisdiction. *See* DI 50; DI 96; DI 80; DI 83. In our June 5 order, we asked

---

56(f). *See* DI 106; DI 107. At the June 15 conference, plaintiffs did not oppose entry of final judgment under Rule 56 as the necessary result of the June 5 order. As we understand it, plaintiffs declined to effectuate a consent judgment for fear of waiving their right to appeal. *See Anderson v. White*, 888 F.2d 985, 990-91 (3d Cir. 1989) (distinguishing between finally resolving a case by "consent order" and "by granting a disputed summary judgment").

plaintiffs to explain what issues remained for trial in light of the rulings in the order; they could not identify any issues and stipulated that final judgment was warranted. Summary judgment pursuant to Rule 56(f) is appropriate.

## III.   DISCUSSION

The parties agree that final judgment is warranted as a necessary result of our June 5 order. We write now only to enter judgment in favor of Allied and reiterate our reasons for doing so. For convenience, we repeat much of the analysis from our June 5 order below.[9]

### A. D'Angelo & Eurell is dismissed for lack of standing.

In its motion to dismiss, Allied argued that D'Angelo & Eurell lacks standing to sue because it is not a real legal entity, and the individual plaintiffs lack standing to sue because the policy is void. DI 84-2.

"Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006). To show standing, the party invoking federal jurisdiction must show "(i) an injury-in-fact (ii) that is fairly traceable to the conduct of the party sued, and (iii) that is judicially redressable." *Lutter v. JNESO*, 86 F.4th 111, 124 (3d. Cir. 2023). In addition, "the terms 'cases' and 'controversies'" in Article III themselves have meaning. *Id.* at 123. "They require genuine adversity among at least two parties to the litigation, and they prevent advisory opinions." *Id.*

---

[9] We made minor changes to the text of the June 5 order as copied here. For example, we retained most of the original footnotes from the June 5 order but removed those that concerned trial and are inapplicable to the current context.

In our June 5 order, we determined that D'Angelo & Eurell lacks standing to sue. We reasoned:

> First, we agree with other district courts that a plaintiff with no legal existence cannot have standing to sue. *See In re Asbestos Prods. Liab. Litig.*, 311 F.R.D. 152, 155 (E.D. Pa. 2015) (deceased plaintiffs lacked existence and thus complaints were nullities); *In re Proton Pump Inhibitor Prods. Liab. Litig.*, No. 2:17-MD-2789, 2022 WL 17850260, at *2 n.2 (D.N.J. Dec. 22, 2022) (deceased plaintiffs lacked standing); *Kerwin v. Cage Fury Fighting Championships*, No. 14-5159, 2015 WL 5000994, at *1 (E.D. Pa. Aug. 20, 2015) (trade name had no legal existence and thus no standing); *see also Fund Liquidation Holdings LLC v. Bank of America Corp.*, 991 F.3d 370, 384-86 (2d Cir. 2021) (legal existence necessary for standing).
>
> Despite plaintiffs' claim that the "precise form of business entity is not germane here," we must identify the applicable form of business entity to determine its existence. DI 95 at 10. At oral argument on the motion to dismiss, plaintiffs took the position that D'Angelo & Eurell is not a partnership under Pennsylvania law but is an unincorporated association. Under state law, this is defined as an "unincorporated association conducting any business or engaging in any activity of any nature whether for profit or otherwise under a common name." Pa. R. Civ. P. 2151.[10]  Plaintiff has not met its burden to show that D'Angelo & Eurell meets this admittedly vague definition. The evidence shows that in the underlying Markley lawsuit, plaintiffs (then defendants) repeatedly "denied" that D'Angelo & Eurell was a "business or common law partnership," stated that it was "tradename" comprising of solo practitioners, and represented at depositions and in writing that "[t]here is no firm" or "legal entity" of D'Angelo & Eurell. *See* DI 84-2 at 3-5. Plaintiffs point to evidence that the attorneys under D'Angelo & Eurell shared office space, letterhead, and malpractice insurance, and that David D'Angelo and George D'Angelo sometimes worked on cases together and shared a trust account. DI 95 at 8-9. We think that the import of these somewhat half-hearted details is outweighed by plaintiffs' repeated assertions that D'Angelo &

---

[10] District courts have also used the federal definition of a "voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective." *Goldenberg v. Indel, Inc.,* 741 F. Supp. 2d 618, 628 (D.N.J. 2010). In keeping with the Second Circuit's opinion in *Fund Liquidation*, we will apply state law. 991 F.3d at 386 ("Whether a particular corporation or partnership [has legal existence], however, turns on an examination of state law.").

> Eurell was not an entity.[11]
>
> Furthermore, Pennsylvania law provides that an unincorporated association can bring a suit only "in the name of a member or members thereof as trustees ad litem for such association" in the form of "X Association by A and B, Trustees Ad Litem." Pa. R. Civ. P. 2152; *see Underwood v. Maloney*, 256 F.2d 334, 342 (3d Cir. 1958) (applying Rule 2152 to suit in federal court).[12]  Plaintiffs admitted at oral argument that this is not such a suit.  Though this issue may implicate capacity to sue rather than standing, it nonetheless also warrants dismissal.

DI 98 at 1-4 (minor edits to original).

> Second, we determined that David D'Angelo and George D'Angelo retain standing:
>
> Defendant asserts that the insurance policy is void because (1) D'Angelo & Eurell lacked capacity to contract; and (2) David and George made false statements in violation of the policy Condition R.  DI 84-2 at 18-23; *see* DI 49-5 at 28 (ECF) (IV.R. Application).  Without a valid policy, plaintiffs lack standing.  We can easily dispose of the second point above because it substantially overlaps with the merits of defendant's case. . . . *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) ("[A] district court must take care not to reach the merits of a case when deciding a [motion to dismiss for lack of subject-matter jurisdiction].").
>
> On the first point, we disagree with defendant.  It is not clear that use of a fictitious entity as a party to a contract necessarily renders the contract void under Pennsylvania law.  "The use of a fictitious name . . . is merely descriptive of a person or corporation who does business under another name." *Burlington Coat Factory of Pa., LLC v. Grace Constr. Mgmt. Co.*, 126 A.3d 1010, 1024 (Pa. Super. Ct. 2015).  The Pennsylvania Fictitious Names Act states that the failure of

---

[11] Though we need not reach the issue, even if D'Angelo & Eurell were a legal entity, we would strongly consider applying judicial estoppel to bar plaintiffs from taking such a position. *See Montrose Med. Grp. Participating Sav. Plan v. Bulgar*, 243 F.3d 773, 779-80 (3d Cir. 2001).

[12] At oral argument, plaintiffs argued that Rule 17(b) supports its ability to bring a suit in its "common name."  Rule 17(b)(3) states that an "unincorporated association with no such [capacity to sue] under that state's law may sue or be sued in its common name to enforce a *substantive right existing under the United States Constitution or laws*."  Fed. R. Civ. P. 17(b)(3)(A) (emphasis added).  But as to diversity cases like this one, "the purpose of [Rule 17(b)] is to keep or bring the procedure of the federal courts in conformity with that of the courts of the state in which the district court is held." *Maloney*, 256 F.2d at 341 (internal quotations omitted).

9

> a corporation to register a fictitious name by itself does not impair the validity of any contract entered into under that name. 54 Pa. Cons. Stat. § 331(a); *see Rahemtulla v. Hassam*, 539 F. Supp. 2d 755, 770 (M.D. Pa. 2008) (denying argument that partnership documents had no effect because the partnership was a fictitious entity). We cannot say that the contract is void as a matter of law because D'Angelo & Eurell is a fictitious name.
>
> And we think it clear that David and George at least have standing as third-party beneficiaries. Generally, for a third-party beneficiary to recover on a contract, "both contracting parties must have expressed an intention that the third party be a beneficiary, and that intention must have affirmatively appeared in the contract itself." *Scarpitti v. Weborg*, 609 A.2d 147, 149 (Pa. 1992). If the intention is not expressly stated in the contract, a party can still be considered a third party beneficiary if "the circumstances are *so compelling* that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Id.* at 150-51.
>
> We think the policy affirmatively shows the parties' intention to cover David and George. The policy's "Insured" provision states that lawyers listed on the Application are covered "insureds"; David and George were both listed on the application. DI 95 at 18-19; DI 49-5 at 15-16 (II.I. Insured), 144 (ECF). Defendant contests the applicability of the "Insured" provision because David and George were only covered to the extent they were "rendering or failing to render Legal Services" on behalf of D'Angelo & Eurell, which does not exist. DI 49-5 at 16 (ECF). To the extent this clause undermines the *stated* intention in the contract to cover David and George D'Angelo — and we are not convinced that it does — we nonetheless find the circumstances "compelling" enough to recognize David and George D'Angelo's rights under the contract. *Scarpitti*, 609 A.2d at 150. The purpose of this policy was clearly to provide professional liability coverage to attorneys, including David D'Angelo and George D'Angelo. There is no doubt that their beneficiary relationship was "within the contemplation" of the contracting parties. *See id.* at 151 (holding that recognition of purchaser's rights was "compelling" because the purpose of the contract was to benefit prospective homeowners). Defendant's motion to dismiss is denied to the extent that David D'Angelo and George D'Angelo have standing and will remain in the lawsuit as plaintiffs.

DI 98 at 4-6 (minor edits to original). We incorporate the above reasoning here. As effectuated by our June 5 order, D'Angelo & Eurell lacks standing to sue and is dismissed from the case.

### B. As a matter of law, Exclusion B.10 bars coverage for the Markley malpractice claim against George D'Angelo.

In motion *in limine* no. 2, Allied argued to preclude plaintiffs from introducing the $600,000 judgment against George D'Angelo in the Markley lawsuit as evidence of damages. DI 71.  Though framed as a motion *in limine*, this motion raised the question of whether, as a matter of law, the policy provides coverage for Markley's malpractice claim[13] against George D'Angelo.  *See* DI 98 at 6.

On this issue, we reiterate our reasoning from the June 5 order:

> Defendant argues that reimbursement is foreclosed because the policy on its face does "not apply to any Claim . . . based on, arising out of, directly or indirectly resulting from, in consequence of, or ***in any way involving, in whole or in part*** . . . the loss of value of any asset in the Insured's care, custody or control, misappropriation [or] ***conversion***."  DI 49-5 at 18-19 (ECF) (exclusion III.B.10) (emphasis added).  Under the policy, a claim includes any written notice or demand for monetary relief or Legal Services or any civil proceeding in a court of law made to or against an insured.
>
> To defeat this argument, plaintiffs (i) need to show that the Markley malpractice claim against George D'Angelo is not in any way involving, in whole or in part, the Markley conversion claim against George D'Angelo and (ii) if so, then adduce evidence allowing the jury to reach a non-speculative conclusion about how much of the $600,000 is attributable to the non-excluded malpractice claim.  Plaintiffs have shown no prospect of being able to do either one at trial.   On the first point, the language of the exclusion is facially very broad.  *See Twin City Ins. Co. v. Glenn O. Hawbaker, Inc.*, 118 F.4th 567, 576 (3d Cir. 2024).  And even if we might imagine that the Markley jury heard entirely unrelated evidence on malpractice and conversion, yet were invited to award (and did award) a single dollar amount for both, plaintiffs have offered no evidence (perhaps, the Markley trial record) tending to show that the Markley malpractice claim against George

---

[13] In the June 5 order, we questioned whether there was a remaining malpractice "claim" against George D'Angelo that was *not* encompassed by the $600,000 judgment and thus could still be recoverable.  *See* DI 98 at 9 n.8.  But when we asked plaintiffs to identify remaining triable issues, they stipulated to final judgment.  Therefore, we infer that once we decided that Exclusion B.10 barred recovery for the $600,000 judgment, there was no remaining malpractice claim against George D'Angelo that could be covered by the policy.

11

> D'Angelo was not in any way involving, in whole or in part, the Markley conversion claim against George D'Angelo. To the contrary, the Markley pleadings leave no doubt that the malpractice and conversion counts against George D'Angelo shared a tight and common nucleus of operative facts.[14] DI 75 at 130-54 (ECF); DI 94 at 7-10 (ECF). On the second point, plaintiffs stated at the pre-trial conference that their plan at trial is to seek the full $600,000 reimbursement, but they could point to no expected evidence tending to show why the Markley jury would have attributed all the damages to malpractice (or, for that matter, *any* particular amount of the damages to malpractice). To the contrary, the Markley pleadings give the strong impression that the jury would have been focused on George D'Angelo's misappropriation and conversion rather than legal malpractice. DI 75 at 154-55 (ECF) (count I for professional negligence – legal and financial focusing primarily on financial issues).

DI 98 at 6-8 (minor edits to original).

In short, plaintiffs failed to adduce any evidence that Markley's malpractice claim against George D'Angelo was *not* related to misappropriation or conversion. As a matter of law, Exclusion B.10 bars coverage for Markley's malpractice claim against George D'Angelo.

### C. As a matter of law, the allegations in the Markley lawsuit constituted a single "claim" under the policy.

In motion *in limine* no. 3, Allied argued that Markley's allegations constituted a single "claim" under the policy subject to the $500,000 per claim liability limit. DI 72. In the June 5 order, we reasoned:

> The policy at issue here is limited to a $500,000 maximum per claim regardless of the number of insureds or claims. DI 49-5 at 5, 19 (ECF) (Item 3(a), IV.A. Limit of Liability). Defendant argues that there is only one claim at issue in this case,

---

[14] The Markley pleadings likely control. Generally, "[u]nder Pennsylvania law, the duty to defend is determined solely by the allegations contained within the four corners of the complaint." *Colony Ins. Co. v. Mid-Atlantic Youth Servs. Corp.*, 485 F. App'x 536, 538 (3d Cir. 2012). But we are entirely open-minded to considering extrinsic evidence as part of plaintiffs' argument that an exclusion does not apply. *Air Prods. & Chems. v. Hartford Accident & Indem. Co.*, 25 F.3d 177, 180 (3d Cir. 1994). The problem is that plaintiffs have not shown us any influential extrinsic evidence on this point.

12

and therefore, damages should be capped at $500,000.  That raises the question: how many claims do plaintiffs say there were?  Pressed at the pre-trial hearing, plaintiffs said two: one against George D'Angelo and one against David D'Angelo.  Defendant argues that the policy language deems these a single claim as a matter of law.

The policy provides that "All Claims based upon or arising out of the same Wrongful Act or Related Act or Omission shall be considered a single Claim . . . subject to one limit of liability."  *Id.* at 20 (ECF) (IV.C Related Acts).  And a "Related Act or Omission" includes "all acts or omissions based on, arising out of, directly or indirectly resulting from, or in any way involving the same or related facts, circumstances, situations, transactions."  *Id.* at 17 (ECF) (II.S Related Act or Omission).  Putting these two provisions together casts a broad net.  *See Twin City Ins. Co.*, 118 F.4th at 576.  But plaintiffs argue that the claims against David D'Angelo "do *not* pertain to any of the same facts as the claims against George D'Angelo.  They are unrelated claims stemming from distinctly different acts."  DI 80 at 3.  At the pre-trial hearing, we asked plaintiffs, on what factual basis is a jury supposed to decide whether there is one claim or two?  The answer was the same one given by defendant: the Markley pleadings.  Because there apparently is no extrinsic evidence of significance, we will examine the Markley pleadings ourselves and answer the question.

The Markley amended complaint spans 225 paragraphs, but the same counts are stated against David D'Angelo and George D'Angelo.  DI 75 at 154-60 (ECF).  The "facts common to all counts" leave little doubt that the claims against both individuals share a common nucleus: "George's son David assisted George in perpetrating and attempting to conceal the fraudulent conduct."  *Id.* at 131 (ECF); *see also id.* at 138 (ECF) ("Inconsistent and incomplete explanations by all Defendants . . .); *id.* at 147 (ECF) ("David and all Defendants have claimed entitlement for undocumented, alleged travel expenses of George . . ."); *id.* ("All Defendants engaged in continued unethical conduct and exacerbated the adverse effects of prior unethical conduct by acting in concert . . ."); *id.* ("David and the Firm became accessories after the fact and co-conspirators as to all the prior misconduct by their joint and systematic effort . . ."); *id.* ("all Defendants improperly benefited"); *id.* at 149 (ECF) ("All Defendants owed Lisa Markley a duty of professional and fiduciary care . . ."); *id.* ("All Defendants knew or should have known that George was unqualified . . ."); DI 94 at 7-10 (ECF) (highlights of the same).  Plaintiffs' two proposed claims — the one against George D'Angelo and the one against David D'Angelo — must be viewed as the same claim under the policy because they arise out of the same or related facts and circumstances.  DI 49-5 at 20 (ECF) (IV.C Related Acts); *id.* at 17 (ECF) (II.S Related Act or Omission).  Therefore, we are compelled to agree with defendant and grant motion *in limine* no. 2.

DI 98 at 8-10 (minor edits to original).  Markley's allegations and lawsuit constituted only one "claim" under the policy.

### D. We grant summary judgment in favor Allied.

Putting the pieces together, our June 5 order necessitates final judgment for Allied.  First, D'Angelo & Eurell is dismissed, so the only remaining plaintiffs are David D'Angelo and the Estate of George D'Angelo.

Second, no triable issues remain to decide plaintiffs' breach of contract claim against Allied.  "A carrier's duties to defend and indemnify an insured in a suit brought by a third party depend upon a determination of whether the third party's complaint triggers coverage." *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999).  "[A] court ascertaining whether an insurer has a duty to defend its insured makes its determination by defining the scope of coverage under the insurance policy on which the insured relies and comparing the scope of coverage to the allegations of the underlying complaint." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016).  An insurer has a duty to defend "if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy." *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010).  Because the duty to defend is broader than the duty to indemnify, an insurer "will not have a duty to indemnify an insured for a judgment in an action for which it was not required to provide defense." *Ramara*, 814 F.3d at 673.

As outlined above, our analysis of the policy and Markley pleadings dictate that Markley's allegations gave rise to one, unrecoverable claim.  Exclusion B.10 bars coverage for

Markley's malpractice claim against George D'Angelo. And under the policy's "Related Act of Omission" provision, Markley's claim against George D'Angelo is one and the same with Markley's claim against David D'Angelo. Therefore, Allied had no duty to defend George D'Angelo or David D'Angelo in the Markley matter, nor to indemnify them for the resulting judgment and legal expenses. We will grant summary judgment on the breach of contract count.

Third, no triable issues remain to decide plaintiffs' bad faith claim. To recover in a bad faith action under 42 Pa. Cons. Stat. § 8371, "the plaintiff must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis." *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017). Because we have determined that Allied had no duty to defend or indemnify plaintiffs under the policy, plaintiffs cannot satisfy the elements of a bad faith claim. We grant summary judgment in favor of Allied on the bad faith count.

## IV.    CONCLUSION

For the foregoing reasons, and in light of our June 5 order, we grant summary judgment on plaintiffs' breach of contract and bad faith claims. An appropriate order follows.